# CHARLESTON

Chapman v. Liverpool Salt and Coal Company.

Submitted February 28, 1905.    Decided March 28, 1905.

1. Jury Trial—*Verdict Set Aside on Plain Preponderance of Evidence.*
   This Court will set aside the verdict of a jury, although the evidence is conflicting, where, upon the whole evidence, it appears to be plainly wrong, and clearly against the weight of the testimony; and when, to permit such verdict to stand, would be a plain injustice to the defendant.    (p. 400.)

2. Settlements—*Reopening of Same—What Evidence Required.*
   Settled or stated accounts cannot be opened or corrected except on the ground of fraud, accident, mistake or omission; and the burden is on the party seeking to impeach the account to prove the existence of such fraud, accident, mistake or omission, by clear and convincing evidence.    (p. 399.)

Error to Circuit Court, Mason County.

Action by F. A. Chapman against the Liverpool Salt & Coal Company. Judgment for plaintiff, and defendant brings error.

*Reversed.*

Chas. E. Hogg, W. R. Gunn and Summerville & Summerville, for plaintiff in error.

Rankin Wiley, for defendant in error.

Sanders, Judge:

The plaintiff, F. A. Chapman, brought his action of *assumpsit* in the circuit court of Mason county against the Liverpool Salt and Coal Company, and recovered a judgment for the sum of $200.00, to which judgment a writ of error and *supersedeas* was allowed upon the petition of the defendant.

The defendant claims that the circuit court should have set aside the verdict of the jury and awarded it a new trial, because neither the law nor the evidence warranted the verdict, and also for the reason that all the matters in difference between it and plaintiff had been settled, and the plaintiff had given to the defendant receipts in full showing such settlement, and that the plaintiff failed to show that there was any fraud, accident or mistake in the procurement of the

same.  The defendant was engaged in the manufacture and
sale of salt prior to and at the time the work was done out of
which grows this litigation, and while so engaged in said
business, and prior to the 13th day of April, 1900, the
plaintiff was employed to do work for it in packing and sack-
ing salt, for which he was to receive the stipulated price of
$1.20 per day, but just how long the plaintiff's employment
continued by the day at this price does not appear.  The
plaintiff, however, ceased to work for the defendant by the
day, and about the 13th day of April, 1900, engaged himself
to work for it by the piece; to receive so much per barrel for
packing salt and so much per sack for sacking it.  There is
no claim made by the plaintiff for anything on account of
this character of work.  It seems to be admitted that full
settlement was made for it, ·but he does claim that while
doing this work he did other work for the defendant, as well
when he worked by the day as he did while he worked by
the piece, but that while working by the day it was included
in his day's work, for which he received the sum of $1.20.
The work which plaintiff claims he did while working by the
piece, and for which he did not receive pay, was keeping the
time of the workmen about the salt house, making estimates
of the salt in the salt house, waiting upon the local trade, and
counting and keeping account of all salt shipped, and attend-
ing to the loading thereof, etc., and for which work plaintiff
claims that defendant expressly promised to pay him.  There
is no dispute that the plaintiff did do some such work for
the defendant while working by the piece or job, but it is
very difficult to determine from the evidence just how much
time of the plaintiff was occupied in doing this work.  But
the defendant claims that while plaintiff was working by the
day, he requested, at different times, to be permitted to
work by the piece, and that, through its general manager,
Horace F. Smith, it finally agreed with the plaintiff that if
he would do the other work which he had been doing, and
which is the subject matter of this litigation, that is, keep-
ing the time, etc., that it would employ him by the piece,. to
which plaintiff agreed; and the defendant claims further that
it did not promise to pay plaintiff anything extra for such
work.                                    ·

There is no doubt, from the evidence, but what the plaintiff

did do some of the work for the defendant for which this suit is brought to recover. This, in fact, is admitted by Horace F. Smith, the general manager of the defendant, and the only witness introduced in its behalf; but upon the question as to whether or not the plaintiff was to have extra pay for such work, the evidence is conflicting, the plaintiff stating that the general manager of the company agreed to pay him for such work, and also supported his testimony by the evidence of his brother, Dome Chapman, who stated that Smith, in his presence, told the plaintiff that he would pay him for it. This is denied by Smith. He states that the consideration for the plaintiff's doing this class of work was, as before stated, that he would change his employment from that of day labor to piece work. Therefore, as to whether or not the plaintiff agreed to do this work without charge in consideration of the change in his employment, and as to whether or not the defendant agreed to pay him for such work, were qestions to be determined by the jury upon this conflicting testimony, and if this were all the evidence upon that subject, the verdict of the jury could not be disturbed.

This brings us to the consideration of the question presented by the receipts which are claimed as settlements between the parties. The defendant made monthly settlements with its employes, furnishing to each of them an itemized account, showing the debits and credits for the previous month, and requiring them, before payment, to receipt the account, showing payment in full. This the plaintiff did while he was in the employ of the defendant, each month, and on the 15th day of August, 1902, he ceased to work for it, and thereafter, on the first day of September, of the same year, a statement was rendered, showing the status of the account between him and the defendant, and which he receipted, showing payment in full to Sept. 1, 1902. This receipted account was introduced in evidence by the defendant after the plaintiff had rested his case, and the defendant claims that after this was done, no evidence was offered to show fraud, accident or mistake therein. During the entire time that the plaintiff worked for the defendant, each month an itemized account of all the work done was rendered, and in which, at various times, was included extra work; and at no time upon these settlements did the plaintiff claim any-

thing additional on account of the work which he claims to have done, and for which he says he should now recover. It is true that in an indefinite, inaccurate and unreliable way, he states that at different times he claimed to be entitled to pay for extra work, but these claims do not appear to have been made at the time of·either of the settlements when the receipts for the previous month's work were given, except for the last month, and there we find that the plaintiff's own testimony is in direct conflict. In answer to a question, "Did you make any demand for this extra work then?" he answered, "Not at the time I quit. I demanded it at different times." "Didn't you make any demand when you· signed this receipt in September, 1902?" Answer, "Yes, sir, and I said at other times, too." This character of testimony cannot safely be relied upon; stating at one time that he did not make any demand at the time he quit, and in the next answer following, that he did make such demand. Therefore, we might say that we are left without proof as to whether or not a demand was ever made by the plaintiff for the extra time at the time of the making of these various settlements, because his own evidence upon that point is all we have, and when we find his statements are in direct conflict, we cannot safely use them as a guide. And then, again, inasmuch as extra work was included in these statements at various times, it does seem unreasonable that a part of it would be included and another part excluded; and the part excluded was not claimed or contended for by the plaintiff, but its exclusion seems to have met with his acquiescence and approval during the entire time of his engagement with the defendant. These accounts being itemized, made off monthly and rendered to the plaintiff, and which were not objected to by him in any part, but upon which repeated settlements were made, constitute stated and settled accounts between the parties. In fact, each statement was settled upon at the end of each month. An account stated is not, in general, conclusive. Its effect is to establish, *prima facie*, the accuracy and correctness of the items, and it seems that the strength of the presumption of correctness depends, to some extent, upon the circumstances of the case; and a stated and settled account cannot be opened, impeached or corrected except on the ground of fraud, mistake, omission, accident, or undue advantage, and the burden is on the party

seeking to impeach it to prove the existence of such facts . Such account is a mere admission that the amount is correct. It is not an estoppel. The account is still open to impeachment for mistake or error. Its effect is to establish *prima facie* the accuracy of the items without other proof, and the party seeking to impeach it is bound to show affirmatively the mistake or error alleged. The force of the admission, and the strength of the evidence which would be necessary to affect it, will depend upon the circumstances of the case. And an account stated, which is shown to have been examined and signed by the party who seeks to impeach it, and upon which settlements have been made monthly, is much stronger, and requires much stronger proof to open it than would be required if it merely appeared that it had been delivered to the party, or sent by mail, and acquiesced in for a sufficient length of time to entitle it to be considered as an account stated. The case of *Dolan* v. *Frieberg*, 4 W. Va. 101, is cited by counsel for the plaintiff, in which it is said: "A receipt for money which appears to be in full, on account, to date does not import an agreement or contract between the parties, and is open to explanation and contradiction by parol proof." But JUDGE BERKSHIRE, in delivering the opinion of the Court in that case, says: "Ordinarily, receipts are mere *ex parte* acknowledgments of payments, or delivery and the like. But they may, and often do, contain an agreement or contract between the parties; and as to the former, they are only *prima facie*, and can be explained; while the latter are conclusive, and cannot be contradicted or explained by oral testimony." This authority is based upon a receipt given upon a single transaction, and does not involve the question of stated and settled accounts, such as we have here; and, therefore, it, as well as the other authorities cited by plaintiff's counsel, bear no analogy to this case. But the true rule to be applied here is, that before the plaintiff can recover, he must show that in these various settlements there was fraud, accident, mistake, or omission; and not only must this be done, but it must be done by clear and convincing testimony. No fraud, accident, or mistake, is attempted to be shown, and the only thing the plaintiff does endeavor to show is that in the statements this extra time was omitted. All the physical facts in this case are against this contention,

and go to support the theory that the company did not promise to pay for such extra work. The change in the employment of the plaintiff from day labor to piece work is claimed by the defendant to be one of the considerations that he would do this extra work. This theory is borne out by the fact that he made much better wages at piece work than he did working by the day. It is also upheld by reason of the fact that upon sixteen different settlements, where itemized accounts had been rendered to the plaintiff, including some extra work which had been done by him, not even a claim or contention was made by him that these accounts were not absolutely correct; and another strong and cogent reason to support the defendant's claim is, that it was the duty of the plaintiff to keep an account of and turn in all the extra time of the employes of the defendant, including himself. This he did from month to month, and not a single time did he turn in extra charges for which he now says defendant should pay him.

Instead of the plaintiff showing by clear and full proof that he was entitled to pay for the extra work for which he has charged, and that it was omitted from the various accounts rendered him, it clearly appears that the defendant never agreed to pay him for such extra work, and, of course, therefore, it could not have been omitted from the account.

In *Shrewsberry* v. *Tufts*, 41 W. Va. 212, the Court approved an instruction which told the jury that if they believed from the evidence that there was an account stated between the parties, then the effect of it was to cast the burden of proof upon the party complaining to show fraud, error or mistake; and that, after a reasonable time, an account rendered and not objected to, becomes admitted as correct; and if the plaintiff's statement of his account with the defendant was rendered about the close of each year, during the time that the plaintiff was in the defendant's employ, and afterwards the plaintiff had an opportunity, by the exercise of reasonable care and diligence, to discover any alleged errors in the same, then as to all the items of alleged error in such account stated, and not within a reasonable time thererafter specifically called to the attention of the defendant, by the plaintiff, that he was concluded and estopped.

Courts very reluctantly disturb the findings of juries, and

in doing so, exercise the greatest caution; but, in this case, the verdict is so manifestly and clearly against the decided weight of the testimony, we feel that to permit it to stand would be a rank injustice to the defendant. Therefore, the judgment of the circuit court is reversed, the verdict of the jury set aside, and a new trial awarded the defendant.

*Reversed.*