# CHARLESTON

KELLEY v. AETNA INSURANCE COMPANY.

Submitted February 4, 1915. Decided February 16, 1915.

1. INSURANCE—*Fire Policy—Cancellation—Burden of Proof.*
    In an action on a policy of fire insurance, if the defense be that

within the five days after notice to the assured of defendant's purpose to cancel the policy and calling for its surrender, the policy was in fact surrendered, and with assured's consent and agreement cancelled, the burden of proof of establishing such defense rests upon defendant. (p. 643).

2.  SAME—*Fire Policy—Cancellation—Sufficiency of Evidence.*

A case in which such burden was fully borne by the defendant, justifying reversal of the judgment on the adverse verdict of the jury in favor of plaintiff. (p. 644).

3.  NEW TRIAL—*Verdict—Weight of Evidence.*

Where in such case the decided weight and preponderance of the evidence, not depending solely on conflicting oral evidence, but supported by documentary proof, and uncontroverted facts, greatly preponderates in favor of defendant, such adverse verdict should be set aside and a new trial awarded. (p. 644).

4.  INSURANCE—*Cancellation—Notice—Waiver—Consideration.*

When in such case it clearly appears by the preponderance of the evidence that the assured at the time he surrendered his policy for cancellation had knowledge of his right to five days notice, but within that time surrendered the policy and consented and agreed to its cancellation, and takes credit for the unearned premium as of the day of such surrender and cancellation, such waiver of his right is supported by sufficient consideration, and he cannot thereafter assert any rights under the policy, or recover thereon for a loss occurring within the five days. (p.645).

5.  APPEAL AND ERROR—*Harmless Error—Limiting Cross-Examination.*

Error, if any, in denying proper cross-examination, will not be regarded here, when it appears, as in this case, that such error was fully cured by proper cross-examination of the witness permitted on his subsequent recall. (p. 647).

Error to Circuit Court, Mercer County.

Action by M. H. Kelley against the Aetna Insurance Company. Judgment for plaintiff, and defendant brings error.

*Reversed, and new trial awarded.*

*Sexton & Roberts,* for plaintiff in error.

*Sanders & Crockett,* for defendant in error.

MILLER, JUDGE:

Action on a policy of fire insurance. Judgment for plaintiff on the verdict for one thousand dollars, the full amount

of the policy. This writ of error is prosecuted by defendant company.

The defenses interposed were non-assumpsit, and a special plea that at the time of the fire the policy sued on was not in force, that prior thereto plaintiff had surrendered the policy to defendant for cancellation, and that the same had been duly cancelled at the time of its delivery for that purpose.

The declaration, in the brief form prescribed by the statute, alleged, parenthetically, that the original policy of insurance, a copy whereof purported to be filed with the declaration, was in the possession of defendant, and which had been obtained by it wrongfully, and the production thereof would be demanded on the trial.

On demand by defendant, plaintiff filed a bill of particulars, alleging that the Flat Top Insurance Agency, defendant's agent, wrote plaintiff that it had been ordered to cancel said policy, and requested plaintiff to return the same for that purpose; that plaintiff went to see said agent, concerning the cancellation thereof, and with the view of having other insurance written, taking with him the said policy, and that while in the office of said agent, defendant, through its said agent, obtained possession of said policy, and refused to return it to plaintiff, although demanded by him to do so; that said policy was not surrendered to said agent, nor to any other person, and that the notice required for cancellation thereof had not been given, and that at the time of the fire destroying the property insured said policy was in full force and effect.

On the issues thus presented the facts proven were: That the policy, the Standard form of New York, was issued February 4, 1913, for one year from February 3, 1913, at noon, to February 3, 1914, at noon, for one thousand dollars, covering insured's one-half interest in a three story frame, metal roof building, situated at Giatto, Mercer County, West Virginia, and known as "Ashworth Hotel". Other insurance permitted not exceeding three fourths of the actual cash value of the property. That the premium, $54.60, had not been paid by the assured but charged to plaintiff by defendant's agents, but that before the fire, these agents had paid the premium to defendant, less their commissions. That on May 24, 1913, the Flat Top Insurance Agency wrote plaintiff that

defendant company had ordered cancellation of said policy, and requesting its return to them in the enclosed stamped envelope, and saying that they would remit the amount of the unearned premium due; also notifying him with regrets, that they would be unable to replace the insurance in any of the other companies represented by them; that this letter was received by plaintiff, either on ·Sunday, May 25, ·or Monday, May 26, 1913. That on May 27, 1913, in response to said letter, plaintiff took the policy and the letter to the office of the Flat Top Insurance Agency, handed both to Mr. Payne, ·the bookkeeper and cashier, Mr. Bradshaw, the secretary and treasurer, being also present, when the earned and unearned premium on the policy were calculated as of May 26, 1913, at noon, the earned premium amounting to $16.75, and that after crediting plaintiff thereon with $10.05, standing to his credit on the books of the agency, for the return premium on another policy, plaintiff paid the balance of the earned premium, $6.70, and took a receipt therefor, as being in full of his account.

That on May 28, 1913, following this transaction, plaintiff made application to another agency for a like amount of insurance on the same property, but not having the necessary data, made an appointment with the agent to meet him at his place of business ·in Bluefield, at an hour stipulated, and at which hour the agent called, but not finding plaintiff in, failed to get the data, and the policy was never issued to take the place of the cancelled policy.

The fire destroying the property occurred on the night of May 28, 1913. At that time plaintiff held a policy in the Svea Fire & Life Insurance Company for $500.00, and in his proof of loss to that company, verified by his affidavit, plaintiff stated that the total amount of insurance covering the property "was $500.00 and not more." It is shown also that on the ·morning of May 29, 1913, after the fire, plaintiff went to the office of the agency to which he had the day before applied for the new insurance and inquired of the agent, whether he had issued any insurance on his property, and stating that the property had burned the night before, and being told by the agent that not having been able to get the data from him the day before, when he called as agreed, he

had not written any insurance on the property; that on the same day, either before or after seeing this agent, plaintiff was at the office of the Flat Top Insurance Agency, and gave information to Bradshaw of that agency of his loss the night before, but Bradshaw says he then made no claim or pretense that the cancelled policy was still in force, and though plaintiff was subsequently recalled, he did not contradict Bradshaw or pretend to have then asserted a claim of loss against defendant company on account of said policy. He does say that he inquired of Bradshaw and Payne on that occasion if the Aetna policy had been cancelled and was told by them that it had been. And he says that he then went to the other agency to see if they had written a policy.

The foregoing are the uncontroverted facts in the case. The only material facts which can be said to be in controversy are as to who were present and what was said between Kelley, the assured, and Bradshaw and Payne, the agents for defendant company, on the afternoon of May 27, 1913, at the offices of the Flat Top Insurance Agency, when Kelley went there and turned in the policy sued on, with the letter of notification of May 24, 1913. Kelley swears that Bradshaw was not in when he entered the office, nor until after he had handed the policy and letter to Payne, and had talked to Payne about paying the premium. Bradshaw and Payne swear that both were present during the entire transaction, and heard and participated in all that was said on that occasion. Being asked on cross-examination why he had taken his policy to the Flat Top Insurance Agency on May 27, 1913, he answered: "I owed the premium on the policy, and I thought that it was on that account that they wanted the policy, and I went down to pay the premium." When recalled after Bradshaw and Payne, and others, had testified, Kelley swore in chief that when he received the letter of May 24, 1913, from defendant's agents he "went to pay the premium, as I thought, on the policy that I had, and they just took the policy and started to figure on it"; and "I thought I was going to pay the premium on the policy when I went in there"; and they gave him the "receipt which has been introduced in evidence in this case, for $6.70." He also swears that when he first went in Bradshaw was not there, but Payne was, and that he had

conversation with Payne before Bradshaw came in; that Payne and some lady were in there, lady not named or produced; that before Bradshaw came in he was there and went to the window "and placed my policy and my pocket book on the window there * * * * * and I told them I wanted to pay that, and Mr. Payne took the policy and placed it on the desk, and I asked him—He said then that—I saw where he was going to keep the policy—went to figuring on the interest—something on the insurance. I saw he was going to keep the policy, and I told him to give it back to me, and he refused, saying that the company was going to take it up, and Mr. Bradshaw didn't come in till—Then I told him—asked him if Mr. McGuire and Perdue had a policy on that building, and he went back and said they had five hundred dollars on it, and then I asked him why they couldn't protect me the same as they did McGuire and Perdue. Then Mr. Bradshaw came in about that time and said if they had a loss at that time they would be held responsible for it, as a special agent told him three months before that time to take that policy up." He says he does not remember anything else said by Bradshaw after he came in; that he did not then or at any time agree to the cancellation of the policy, and requested them right then and there to return the policy. · Asked on cross-examination, why, after receiving the letter of cancellation, if he only went to pay the premium on the policy, he took the policy with him, he said he knew the amount was on the policy. Asked if he didn't suppose they had a record of that amount, he answered "They may have. Q. You could look at the policy, and see what the amount was, couldn't you? A. Yes sir; they could either give me that or give me another policy. * * * * * * * Q. How much did you owe on that policy, Mr. Kelley? A. I don't remember the amount now. Q. You know it was more than $6.70, don't you? A. Yes, sir. Q. Why did you simply pay $6.70? A. Well, I had to pay them whatever they said. They handed me the receipts—they took the policy and handed me the receipt. Q. Didn't they explain to you that was the earned premium on that policy up to that time? A. Yes; they had the policy then; they wouldn't return it. Q. It was explained to you that that was the amount of the earned premium due on that

policy up to that date? A. Yes, sir. Q. And you paid it? A. Yes sir. Q. And left the policy there? A. Yes sir. Q. Why did you pay that premium—that $6.70—if you didn't want to agree to the cancellation? A. I had to do it to be square with the company. Q. You never said anything to them about the five days, did you? A. No, sir. Q. You didn't ask for five days to get other insurance? A. No sir." And a little further on in his cross-examination he testified: "Q. If you were opposing the cancellation of that policy on May 27, why did you agree to pay them the earned premium up to that time and take a receipt for it? A. I couldn't do anything else only pay them what they asked. Q. They explained to you that they couldn't do anything else except cancel the policy—that the company had demanded it? A. Yes, sir. Q. And cancelled it when you delivered it to them? No answer."

Both Bradshaw and Payne swear positively that Kelley presented the policy for cancellation, that the amount of the earned premium was figured, the balance paid, the policy surrendered and cancelled, without any objection from Kelley, and that he made no objection whatever to cancellation, and made no demand for the return of the policy. Payne swears that when Kelley came in on May 27, he presented the policy together with the letter and said: "Here is that policy, you wanted me to bring in; and I took the letter and read it to see what was to be done with it. That was the first I knew of the policy having to be brought in; and just about that time Mr. Bradshaw stepped up and took up the conversation with Mr. Kelley." Asked what he did with the policy at that time, he answered: "I cancelled it. Figured the earned premium on the policy, and there was a credit of another policy that had been previously cancelled—unearned premium on it—that was to Mr. Kelley's credit on his account; and the difference between the credit on that policy and the earned premium on the Aetna policy was something like six or seven dollars, which Mr. Kelley paid me, and I gave him a receipt for that. That squared his account and cancelled the policy at that time."

On these pleadings and issues thereon, and proof presented, can the judgment prevail against the errors assigned and

relied on for reversal? The facts of the issuance of the policy and the loss of the property being shown, and not controverted, the first proposition relied on to support the judgment is that the evidence does not support the defense that the policy was by agreement of the parties, and for a sufficient consideration, cancelled, so as to deprive the assured of the benefit of the five days prescribed by the policy. It is conceded that under the terms of the policy and without such consent and agreement the policy could not have been cancelled within the period of five days from such notice. But it is insisted that the proofs in support of the plea, show beyond the shadow of doubt, and by its overwhelming weight, that the policy was surrendered by the assured and with his consent and agreement cancelled within the five days. This is evidenced not only by the oral evidence of defendant's witnesses, but by the documentary proof admitted supporting the same, and opposed to which there is nothing but the improbable and unsupported oral evidence of plaintiff. Wherefore, the policy was not in force at the time of the fire.

It is undoubtedly the law, applicable to the five days' provision of the Standard form of policy sued on in this case, that without the consent or agreement of the assured, waiving his rights thereunder, the premium being paid, or credit given therefor, the policy cannot within that period be cancelled so as to deprive the assured of the benefit thereof, and that when such cancellation and surrender is relied on as a defense, the burden of establishing the consent and agreement rests on the insurer. Cooley's Briefs on the Law of Ins., 2811, 2812, 2820, 2821. But we think the defendant has fully borne the burden of proof in this case. The things done by the insured respecting such surrender and cancellation, the money paid for earned premium, the receipt taken, his surrender of the policy, plaintiff's sworn proofs of loss, presented to the other company, and his other acts and conduct, are wholly inconsistent with his oral evidence attempting to negative the fact of surrender, and his consent and agreement to cancellation. This documentary evidence fully supports defendant's witnesses on the most material facts, and the verdict can not be allowed to stand on the theory of conflicting oral evidence. We think the decided weight and preponderance of the evi-

dence, not depending on the conflicting oral evidence, but backed by the documentary and uncontroverted facts, greatly preponderates in favor of defendant, supporting its plea, and that the verdict is contrary to the law and the evidence, calling for the application of the rules enunciated in *Coalmer* v. *Barrett*, 61 W. Va. 237, point 4 of the syllabus; *Sims* v. *Carpenter, Frazier & Co.*, 68 W. Va. 223, points 2 and 3 of the syllabus; and *Chapman* v. *Liverpool Salt & Coal Co.*, 57 W. Va. 395, Syl. 1.

Another proposition advanced in support of the judgment is that plaintiff is not shown to have had knowledge of the five days' provision of his policy, and cannot be held to have waived an unknown right, by surrender and cancellation of his policy, and without consideration therefor. He certainly knew the defendant had right of cancellation, and that under the terms of the policy he had right of immediate surrender and cancellation. At the time of plaintiff's surrender of the policy he had a credit on the books of the agency for an unearned premium, for which he took credit on the premium earned on the policy surrendered. He recognized the mutual rights of the parties when after receiving notice he took the policy to the agents and delivered it to them. Pursuant to that notice, or inspired by it, he went to the office of the agency bearing the policy for some purpose. Why did he deliver the policy, if he simply went to pay premium? He did not pay the premium, but only the earned premium up to noon of the day before. He says he demanded the policy back; for what purpose? Was it that he might have the benefit of the remainder of the five days? If so, then he must have had knowledge of the terms of the policy, else he would have made no such demand. How can he plead ignorance of its terms? Neither defendant nor its agents would have undertaken to cancel the policy within the five days if he had not voluntarily surrendered it, and taken credit for the full amount of the unearned premium up to the date of surrender. That was sufficient consideration for his voluntary surrender of the policy before the end of the five days' limitation. The terms of the policy told him of his rights, and of the rights of the defendant. He almost immediately sought other insurance, and but for his negligence he would no doubt have been

fully protected, at the time of his loss, by other insurance. While the policy denied defendant the right to cancel within the five days, it as fully gave right to plaintiff to surrender it for cancellation within the five days and obtain the benefit of the unearned premium. That he did surrender it and paid the premium only up to the date of surrender, or the day before, is proven beyond doubt. He made no tender of more premium, and has not done so, so far as the record shows, up to this time. That the insured may so waive his right to the five days needs no citation of authority. It is in the terms of the policy. And when he does so the insurer need not stop to inquire whether he knows that by the terms of the policy he has other rights. 3 Cooley's Briefs on the Law of Insurance, 2807. For the proposition contended for counsel for plaintiff cite and rely on *Wicks* v. *Scottish Union & National Ins. Co.,* (Wis.) 83 N. W. 781; *Bard* v. *Fireman's Ins. Co:,* (Me.) 81 Atl. Rep. 870; *Rosen* v. *German Alliance Ins. Co.* (Me.) 76 Atl. Rep. 688; *Clark* v. *Insurance Co. of North America,* (Me.) 35 Atl. Rep. 1008. The Wisconsin case is not applicable, for in that case there was nothing in the notice of the insurance company, nor anything done by the insured showing or tending to show an intention or agreement to surrender the policy within the five days. Here there is positive and undeniable evidence of that fact. In that case the court says: "The trouble with the argument here is that there is no proof of any such agreement, and no proof of any facts from which such an agreement is properly inferable." In *Bard* v. *Fireman's Ins. Co.,* there is positive evidence of the insured's refusal to surrender the policy, and denial of defendant's right to cancel, and of fraudulent conduct on the part of the agent in obtaining the policy. In *Rosen* v. *German Alliance Ins. Co.,* the policy had never been delivered to the plaintiff. Plaintiff had no information as to its terms, except the false statements of the agent, and by whom he was misled to consent to cancellation on the promise of the agent to put him into another company. The insured had no knowledge of his rights under the policy. The court said in that case: "It must be further conceded that the parties had a right to cancel the policy at once by mutual agreement; that is, that the plaintiffs had a right to waive

this provision if they saw fit to do so, but on this point the burden of proof is on the defendant.'' In that case the court well said the burden had not been borne by the defendant. In the case at bar we have concluded the burden of the defendant has been fully sustained. See *Miller* v. *Fireman's Ins. Co.*, 54 W. Va. 344, 46 S. E. 181. That cancellation may be effected by mutual consent without regard to the terms of the policy seems to be fully established by the authorities. Besides the authorities cited see, also, 2 Clement on Fire Insurance, (1905) 409, Rule 15, and cases cited.

Another point of error urged is that the court below denied defendant proper cross-examination of plaintiff's witnesses. It is replied that these errors, if errors they be, are not pointed out specifically and were not made the ground of the motion for a new trial, and cannot be considered on this writ of error, and besides were cured by subsequent cross-examination of the witness when recalled. If error there was, which would be available here, we think it was substantially cured by the cross-examination on recall of the witness, and that no prejudicial error was committed in the rulings of the court on the evidence.

Lastly, it is complained that ''Court's Instruction'' to the jury was prejudicial to defendant. Said instruction is as follows: ''The Court instructs the jury that the plaintiff, Kelley, had five days from the time he received notice on the 25th day of May 1913, in which to return the policy under the terms of the policy introduced in evidence in this case, and that the policy would have been in force for five days from the date of receiving the notice; but if the jury believe from the evidence that the plaintiff Kelley delivered said policy to the Flat Top Insurance Agency on the 27th day of May 1913, and agreed for the same to be canceled, then they will find for the defendant; but if the jury believe from the evidence that the said Kelley, when he delivered the policy to said company, did not return the policy for cancellation, but for the purpose of paying the premium, then they will find for the plaintiff.'' The criticism is, that in undertaking in the last clause to state the converse of the proposition stated in the first, the court has given undue prominence to the theory of the plaintiff, that he did not return the policy for cancella-

tion, but for the purpose only of paying the premium. Counsel say that no matter what plaintiff's original purpose in returning the policy may have been, if after he returned it he agreed, as stated in the first clause of the instruction, and the policy was cancelled, plaintiff could not recover; that he would be bound by his waiver and agreement. If the instruction is fairly susceptible of the inconsistency between the two propositions stated, and with defendant's instructions numbered 1 and 2, given, and which seem to state correctly defendant's theory of the case, it probably should not have been given in that form. We are inclined to think that the jury might have been misled by it, but that when read in connection with defendant's instructions, it is doubtful whether they were in fact misled thereby as counsel for defendant suggest. On another trial of the case we think it would be well to modify the instruction if given, so as to avoid the danger of misleading the jury.

For the errors found therein, as noted, the judgment below will be reversed, and the defendant awarded a new trial.

*Reversed, and new trial awarded.*