ANNA MULROY

*v.*

CO-OPERATIVE TRANSIT COMPANY, *a corporation*

(No. 10828)

Submitted September 18, 1956. Decided November 13, 1956.

*Gilbert S. Bachmann, Frank A. O'Brien, Sr.,* for plaintiff in error.

*Goodwin, Spillers & Mead, C. Lee Spillers, Russell B. Goodwin,* for defendant in error.

HAYMOND, JUDGE:

This is an action of trespass on the case instituted in the Circuit Court of Ohio County in which the plaintiff, Anna Mulroy, a married woman, seeks to recover damages from the defendant, Co-Operative Transit Company, a corporation, for personal injuries which the plaintiff alleges were caused by the negligence of the defendant. Upon the trial of the case in February 1955 the jury returned a verdict in favor of the plaintiff for $1,500.00. The circuit court overruled the motion of the defendant to set aside the verdict and grant it a new trial and by order entered June 24, 1955, rendered judgment against the defendant for the amount of the verdict, with interest and costs. To that judgment this Court granted this writ of error and supersedeas upon the petition of the defendant.

Shortly after seven o'clock in the evening of February 23, 1954, the plaintiff became a passenger for hire upon a bus owned by the defendant which at that time was operating between Wheeling, West Virginia, and Rayland, Ohio. The bus was approximately thirty nine feet in length and eight feet in width. It weighed about seventeen thousand pounds and was equipped with airbrakes. On each side of the interior and immediately behind the station of the driver there was a long front seat which was parallel with the side of the bus. To the rear of each of these long front seats were several rows of seats which were located at right angles to the side of the bus on each side of a center aisle which extended to the rear. The plaintiff entered the bus at Eleventh Street in Wheeling and her destination was Martins Ferry, Ohio.

The route followed by the bus passes over a bridge which spans that part of the Ohio River which flows between Wheeling and Wheeling Island. The length of the bridge is approximately 1,500 feet. The roadway of the bridge available for vehicular traffic is eighteen feet to twenty feet in width. From the east end of the bridge the roadway is level for a distance of about 500 feet and

from that point it descends on a slight grade which apparently continues to the west end of the bridge. While the bus was travelling across the bridge in a westerly direction at a speed of ten miles to fifteen miles an hour and when it had reached a point about 300 feet from the west end of the bridge it was brought to an abrupt stop by the action of its driver in suddenly applying the brakes to avoid an oncoming automobile which approached the bus from the west end of the bridge at a speed of about twenty five miles an hour and which, in proceeding on its course without reducing its speed or stopping, narrowly missed striking the left side of the bus. The sudden application of the brakes caused the plaintiff, who was sitting next to the aisle on the first cross seat on the right side of the bus, to be thrown or jarred from the seat against a metal bar or guard rail and to fall upon the floor, and resulted in the injuries for which she sues. Her injuries consisted of several bruises and abrasions which produced pain and stiffness in her legs, her back, her left arm, and her right hip. She was able to leave the bus at Martins Ferry where she remained until later that evening when she was taken to her home in Wheeling in an automobile driven by a friend. The evidence, however, does not show that her injuries are permanent in character.

The plaintiff, who was sixty six years of age at the time of the trial, and two other passengers on the bus when it was brought to a sudden stop, testified in her behalf.

The plaintiff, who was sitting near the aisle on the first cross seat on the right side, stated that she was engaged in conversation with a lady who occupied the portion of the same cross seat near the side window of the bus; that she did not see any other vehicle in front of the bus; that she did not receive any warning that the bus was about to stop; that "we stopped awful quick; it just seemed, like he threw on his brakes and I went down and I hit my leg here on the one handle of the long seat and it turned me around and I fell on the floor this way and I hit my

arm and my leg, and it hurt my back"; that a man who was sitting on the long seat in front of her helped her from the floor and placed her on the long seat; and that she continued to sit on that seat until she left the bus at Martins Ferry. She also testified that she got on the bus at Eleventh Street in Wheeling; and that she paid a fare of fifteen cents at Martins Ferry for her transportation to that place.

Marie Potts, another passenger who was sitting on the first cross seat on the left side of the bus, testified that when the bus was about half way across the bridge it stopped suddenly; that she saw two lights of an automobile travelling in the direction in which the bus was travelling; that she did not know whether it passed the bus but that she thought it did; and that when the bus stopped she was thrown "down on one knee".

Harriet Lynch, another passenger who was riding on the long seat on the left side of the bus immediately in front of the cross seat on which Marie Potts was sitting, testified that while the bus was crossing the bridge the brakes were used and the bus stopped suddenly; that "everyone was pitched forward"; that she slid forward on the seat; and that her elbow was slightly injured. She also testified that before the brakes were applied she did not see any lights of any other vehicle; that she did not receive any warning that the bus was about to stop; that when the bus had stopped she saw an object immediately in front of it which "looked like a truck"; that it appeared that "we were smack up against a blank wall"; and that when the bus stopped the object ahead was from two to five inches in front of the bus.

The driver of the bus, Paul G. Briggs, and six of its passengers were called as witnesses by the defendant.

The driver, who had been employed by the defendant for a period of about eight years, testified that he was operating the bus across the bridge at about seven twenty o'clock in the evening of February 23, 1954; that the speed of the bus was about ten miles per hour; that while

the bus was descending the grade of the roadway he saw an automobile approaching from the west end of the bridge; that when he first saw the automobile it was about 750 feet in front of the bus; that at that time there was no other vehicle in sight either in front of the bus or behind it; that the oncoming automobile was then in its right traffic lane; that its speed was about twenty five miles per hour; that when it was about fifty two feet from the bus it swerved to its left and into the traffic lane of the bus directly in front of it; that to avoid a collision he sounded the horn and applied the brakes and caused the bus to stop suddenly; that the bus was stopped within five or six feet from the point at which he applied the brakes; that the automobile swerved to its right and passed without striking the bus; that the bus had stopped when the automobile passed it; that when it passed the bus the automobile was only about two inches from the left side of the bus; that it passed the bus without reducing its speed and proceeded on its way; that when the bus had stopped the tire on its right front wheel was against a railing on the right side of the roadway; that the plaintiff was "down on one knee" when the bus stopped; that one of the passengers helped her to a seat; that the bus proceeded to a point beyond the west end of the bridge where it was stopped and the witness gave each passenger an accident report card; that the bus then proceeded on its route; and that the plaintiff left the bus without assistance at Martins Ferry.

Patrick J. Hennessey, a passenger who was seated near the window on the third right cross seat, testified that as the bus approached the west end of the bridge the driver "hit his brake hard" and brought the bus "to a dead stop;" that the witness looked forward and saw another automobile approaching from the island end of the bridge; that the automobile "was stradling the center line and he cut to his right, just missed the left front end of the bus, went by the bus and high-tailed it over the bridge."; and that when the witness first saw the automobile it was about fifteen feet from the front end of the bus.

Walter John Plecha, another passenger who was seated next to the window on the fourth cross seat on the right side of the bus, testified that he looked ahead and saw an automobile "coming up with two headlights in the car, that is all you could see and it was in the middle of the bridge; it was headed for us and he didn't seem to want to turn off or anything, he was just headed straight for us, like he would tell us to do anything but stop, so that is all the bus driver had to do but stop, nothing else to do."; that the bus was stopped within a distance of two or three feet and the automobile passed it; that when the automobile passed the bus the witness could not see the headlights of the automobile; that the bus and the automobile were so close to each other that the witness "wouldn't want to be standing between them."; that the bus was near the railing and on its right side of the roadway; that the oncoming automobile was the only vehicle on the bridge in front of the bus; that when the witness first saw the oncoming automobile it was 250 feet in front of the bus; that it was then in the center of the bridge; and that its speed at that time was between twenty five miles and thirty miles an hour.

Sturgis August Grim, also a passenger sitting with Plecha on the fourth cross seat on the right side of the bus, testified that he saw an oncoming automobile in front of the bus; that when he saw the automobile it was about 100 feet from the bus and was in the center of the roadway; that at that time the driver of the bus had not applied its brakes; that an instant later the brakes were applied with such violence that the bus stopped suddenly; that when it stopped the witness was thrown forward but was not injured; that when the brakes were applied "they went on with the idea that if he didn't stop the car was going to hit."; and that if the brakes had been applied when the witness first saw the automobile there was ample time "to apply the brakes moderately" to stop the bus.

Dueward Patrick, another passenger riding in the second cross seat on the right side of the bus, testified

172

that while looking forward he saw an oncoming automobile; that when it was about forty or fifty feet in front of the bus it turned in front of the bus; that "instead of staying on his own side of the road he turned over in front of the bus causing the bus to come to a sudden stop"; that the driver of the bus stopped it very suddenly; that when he applied the brakes he also sounded the horn on the bus; that the automobile was so close to the bus when it turned to its right that the witness could not see its headlights; that the automobile actually missed the bus but that the witness did not know how it did so; that the bus had stopped when the automobile swerved around it; that the speed of the oncoming automobile was twenty miles to twenty five miles an hour; that the witness first saw the oncoming automobile when it was 150 to 175 feet in front of the bus; that at that time the automobile occupied about one foot of the traffic lane of the bus; that the brakes on the bus were not applied until the automobile was about forty feet in front of the bus; and that the bus was stopped within a distance of three feet after the brakes were applied.

Mary E. Wodusky, another passenger who was sitting beside the plaintiff on the first cross seat on the right side of the bus, testified that she saw an automobile approaching in "the middle lane of the bridge and he was too far over on the driver's side of the bus."; that when the driver of the bus saw that the automobile "was getting pretty close" he sounded the horn, put on the brakes and the automobile swerved to the left of the bus; that the bus suddenly came to a complete stop; that the automobile was about forty feet in front of the bus when it swerved into its right lane; that before it stopped the bus was travelling at the rate of from ten miles to twelve miles an hour; that the bus was about one foot from the railing on the right edge of the lane in which the bus was travelling; that she first saw the automobile when it was 250 feet in front of the bus; that it appeared to the witness that it was coming "straight up the center of the bridge."; and that the driver of the bus reduced its speed,

"sounded his horn and put on his brakes to keep from hitting this guy." when the automobile was about forty feet from the bus.

Eugene Robbins, another passenger, who occupied the long seat on the left side of the bus, testified that when the bus was stopped the plaintiff fell from the seat in which she was sitting; that the witness did not see any vehicles on the bridge in front or at the side of the bus; that he did not look to see what had happened except to see whether the plaintiff had been hurt; and that the bus was not "going fast," before it was stopped.

Before instructing the jury the circuit court overruled motions of the defendant to include in the charge, which it gave in lieu of separate instructions, a provision which would have directed the jury to return a verdict for the defendant and a provision which would have told the jury that "a carrier is not liable for injuries resulting from ordinary jerks or jolts incident to the use of the conveyance unless so unusual and violent as to take them out of the ordinary category."

The defendant assigns as error the action of the circuit court (1) in refusing to direct the jury to return a verdict in favor of the defendant; (2) in refusing to instruct the jury, as requested by the defendant, concerning the absence of liability of a common carrier for injuries which result from ordinary jerks or jolts incident to the use of its conveyance; and (3) in denying the motion of the defendant to set aside the verdict and award a new trial because the evidence fails to establish negligence upon the part of the driver of the bus.

The instruction which the defendant moved the circuit court to include in the charge that "a carrier is not liable for injuries resulting from ordinary jerks or jolts incident to the use of the conveyance unless so unusual and violent as to take them out of the ordinary category" was properly refused. It is abstract in form and it would tend to mislead and confuse the jury. The refusal to give

an abstract instruction is not reversible error. *Thrasher* v. *Amere Gas Utilities Company,* 138 W. Va. 166, 75 S. E. 2d 376; *Frampton* v. *Consolidated Bus Lines,* 134 W. Va. 815, 62 S. E. 2d 126; *Wiseman, Admx.* v. *Terry,* 111 W. Va. 620, 163 S. E. 425; *Mercer Funeral Home* v. *Addison Brothers and Smith,* 111 W. Va. 616, 163 S. E. 439; *Morrison* v. *Roush,* 110 W. Va. 398, 158 S. E. 514; *Ross* v. *Lake and Export Coal Company,* 92 W. Va. 229, 116 S. E. 155; *Frank* v. *Monongahela Valley Traction Company,* 75 W. Va. 364, 83 S. E. 1009. It is reversible error to give an abstract instruction which tends to mislead or confuse the jury. *Matthews* v. *Cumberland and Allegheny Gas Company,* 138 W. Va. 639, 77 S. E. 2d 180; *Chaney* v. *Moore,* 101 W. Va. 621, 134 S. E. 204, 47 A.L.R. 800; *Frank* v. *Monongahela Valley Traction Company,* 75 W. Va. 364, 83 S. E. 1009. The giving of the foregoing instruction would have constituted reversible error. The instruction is not supported by the evidence which does not show that any jerk or jolt which accompanied the sudden stop of the bus was ordinary and incident to its use. On the contrary the evidence indicates clearly that the effect of the forceful application of the brakes in suddenly retarding and stopping the forward motion of the bus was unusual and violent and that it could not possibly be regarded as incident to the ordinary use of the bus. Instructions must be based upon the evidence and an instruction which is not sustained by the evidence should be refused. *Wilson* v. *Edwards,* 138 W. Va. 613, 77 S. E. 2d 164; *Thrasher* v. *Amere Gas Utilities Company,* 138 W. Va. 166, 75 S. E. 2d 376; *Ballengee* v. *Whitlock,* 138 W. Va. 58, 74 S. E. 2d 780; *Cato* v. *Silling,* 137 W. Va. 694, 73 S. E. 2d 731; *Kap-Tex, Inc.* v. *Romans,* 136 W. Va. 489, 67 S. E. 2d 847; *Thomason* v. *Mosrie,* 134 W. Va. 634, 60 S. E. 2d 699; *Chesapeake and Ohio Railway Company* v. *Johnson,* 134 W. Va. 619, 60 S. E. 2d 203; *Davis* v. *Pugh,* 133 W. Va. 569, 57 S. E. 2d 9.

The other assignments of error are discussed and disposed of together.

As previously indicated the only material facts estab-

lished by the evidence in behalf of the plaintiff are that she was a passive passenger for hire on the bus owned and operated by the defendant and that as such passenger she was injured as a result of the act of the driver in causing the bus to stop suddenly and without warning while it was travelling on the bridge between Wheeling and Wheeling Island. The respective statements of Marie Potts and Harriet Lynch, witnesses offered by the plaintiff, that Marie Potts saw the lights of an automobile travelling in the same direction in which the bus was travelling but that she did not know whether it passed the bus and that Harriet Lynch saw an object which appeared to her to be a truck immediately in front of the bus after it had stopped are so imaginary, speculative, immaterial and inaccurate, when considered in conjunction with the physical facts and the testimony of the six defense witnesses who saw the oncoming automobile in front of the bus, that they utterly fail and are clearly insufficient to establish any negligence whatsoever on the part of the driver of the bus.

The foregoing material facts, however, form the basis of and create a *prima facie* case of negligence on the part of the defendant. *Isabella* v. *West Virginia Transportation Company,* 132 W. Va. 85, 51 S. E. 2d 318; *Laphew* v. *Consolidated Bus Lines,* 133 W. Va. 291, 55 S. E. 2d 881. The *prima facie* case of negligence on the part of the defendant, however, is merely a rebuttable presumption that the injuries sustained by the plaintiff were caused by the negligence of the defendant. *Laphew* v. *Consolidated Bus Lines,* 133 W. Va. 291, 55 S. E. 2d 881. In that case the opinion contains this language: "The fact that plaintiff in the instant case was injured while riding passively as a passenger in a motor bus, which was then being operated as a common carrier of passengers, gave rise to a *prima facie* case which, on the question of negligence, is tantamount to a rebuttable presumption that the injuries were incurred as the result of defendants' negligence."

If the above recited material facts constituted all the

evidence in this case, the circuit court, upon those facts and the rebuttable presumption of negligence based upon and created by them, would have been warranted in submitting to the jury the issue of negligence on the part of the defendant and the foregoing material facts and the presumption would be sufficient to support a verdict in favor of the plaintiff. When, however, as in this case, substantial and credible evidence is introduced, which explains or overcomes the rebuttable presumption of negligence, that presumption does not of itself permit a plaintiff in a carrier and passenger case to recover. *Laphew* v. *Consolidated Bus Lines,* 133 W. Va. 291, 55 S. E. 2d 881.

In *Jenkins* v. *Spitler,* 120 W. Va. 514, 199 S. E. 368, cited in the opinion in the *Laphew* case, this Court, discussing a stipulation which created a rebuttable presumption, used this language: "This rebuttable presumption 'is not evidence of a fact, but purely a conclusion, having no probative force, and designed only to sustain the burden of proof until evidence is introduced tending to overcome it.' 1 Jones, Commentaries (2d Ed.), 59, section 30. See also, *Buskirk* v. *State-Planters Bank & Trust Co.,* 113 W. Va. 764, 767, 169 S. E. 738; *Mack Realty Company* v. *Beckley Hardware & Supply Company,* 107 W. Va. 290, 296, 148 S. E. 122; *Dwight* v. *Hazlett,* 107 W. Va. 192, 200-1, 147 S. E. 877, 66 A. L. R. 102; Wigmore on Evidence (2d Ed.), sec. 2491; Moore on Facts, sec. 545; 1 Greenleaf on Evidence (16th Ed.), sec. 14y; Thayer on Evidence, pp. 575-6; Ency. of Evidence, Presumptions, sec. 6; 22 C. J., Evidence, sec. 88; and Annotation 95 A. L. R. 880. It does not shift the burden of proof. With the introduction of evidence it loses entirely its legal force. Only the facts which give rise to it remain to be considered by the jury, along with the other evidence."

The evidence introduced in behalf of the defendant, bearing upon the location and the action of the oncoming automobile and the conduct of the driver of the bus in stopping it as he did to avoid a collision, fully explains

and completely overcomes the rebuttable presumption based upon and created by the evidence offered in behalf of the plaintiff. The effect of the evidence introduced in behalf of the defendant was to eliminate the presumption from the case, to destroy its legal force, and to prevent its consideration by the jury. In consequence it could not support or operate to sustain a verdict in favor of the plaintiff.

The clear preponderance of the evidence, much of which is undisputed, shows that the driver of the bus was suddenly, and without fault upon his part, confronted with an emergency which he did not create but which required his immediate action, and that his conduct in the emergency did not constitute actionable negligence. Though there are some discrepancies in the testimony of the defense witnesses who saw the oncoming automobile, with respect to its position on the roadway and its distance from the bus when each of them first observed it, the evidence is undisputed that when the automobile was between fifty two feet and fifteen feet from the bus it approached the bus, without checking its speed of approximately twenty five miles per hour, in the traffic lane in which the bus was required to travel. The evidence is also undisputed that the bus was travelling at a lawful and reasonable rate of speed; that its horn was sounded; that it was at or near its right edge of the roadway when and immediately before it was brought to a stop; that because of the barrier on that side of the roadway it was impossible to move it further in that direction; that the only alternatives then available to its driver were to continue its forward operation or to bring it to a sudden stop; and that if he had not checked the speed of the bus and stopped it as and when he did a serious collision with the oncoming automobile would have occurred which would have caused similar and perhaps more severe injuries to the plaintiff with the probability that other occupants of the bus would have been injured.

Whether the oncoming automobile was in its right lane of traffic and so continued from a point approximately 750

feet in front of the bus until it came to within fifty two feet of it and then swerved to the left and into the traffic lane of the bus, as testified by the driver of the bus, or whether the left portion of the automobile was in the traffic lane of the bus when it was 250 feet, 150 feet, or 100 feet from the bus and veered further to its left in the traffic lane of the bus when it was approximately forty feet from it, as testified by some of the witnesses produced in behalf of the defendant, the driver of the bus had the right to assume that the automobile would return to its right traffic lane in sufficient time to pass the bus on its right with safety until he realized or knew, when the oncoming automobile was still in the traffic lane of the bus at a distance of fifty two feet in front of it, that the driver of the automobile would not or could not return to its traffic lane in time to enable it to pass the bus in safety.

It is clear from the undisputed testimony of the driver of the bus that he did not realize or know that unless he stopped the bus the oncoming automobile could not pass it safely until it was about fifty two feet in front of the bus when the driver of the bus forcefully applied its brakes and brought it to a sudden stop and enabled the oncoming automobile to pass to its right by the narrow margin of a few inches from the left side of the bus.

Under the provisions of Section 2, Article 7, Chapter 17C of Chapter 129, Acts of the Legislature, 1951, Regular Session, the drivers of vehicles proceeding in opposite directions are required to pass each other to the right; and until the oncoming automobile was within fifty two feet of the bus, the driver of the bus was justified in assuming that the driver of the oncoming automobile would observe the requirement of the statute.

In *Tochek* v. *Monongahela Transport Company*, 109 W. Va. 20, 152 S. E. 776, this Court quoted with approval this passage from Berry on Automobiles (6th Ed.) Volume 1, Section 225: "A person operating an automobile in a public highway, exercising reasonable care, may as-

sume that others using the highway will also act with reasonable care; and he is not negligent in acting accordingly. Others may assume the same of him. He has a right to assume that the drivers of other vehicles will observe the law of the road, and he is not guilty of contributory negligence in acting upon such assumption, unless he has knowledge to the contrary."

In the *Tochek* case, this Court, in reversing a judgment and setting aside a verdict in favor of the plaintiff who was injured while a passenger upon a bus operated by the defendant, and in holding that the driver of the bus was confronted with a sudden emergency which he did not create, used this pertinent language: "In such emergency, not created by the bus driver's negligence his principal is not responsible for consequences of his action which seems to have been the very best course he could pursue under the circumstances to avoid a probably serious collision. Even if he did not exercise the soundest judgment in such a situation, his failure to do so would not create liability. 'The rule, therefore, resolves itself to this: That a person confronted with a sudden peril or emergency will not be held responsible for the consequences of an act or course of action, or omission, which, had he indulged in under normal circumstances, would charge him with negligence; except that he will be held responsible for such acts or omissions which an ordinary prudent person would have avoided even in an emergency or peril similar to the one in question.' Vartanian, The Law of Auto., § 6."

A person confronted with a sudden emergency which he does not create, who acts according to his best judgment or, because of insufficient time to form a judgment, fails to act in the most judicious manner, is not guilty of negligence if he exercises the care of a reasonably prudent person in like circumstances. *Matthews* v. *Cumberland and Allegheny Gas Company*, 138 W. Va. 639, 77 S. E. 2d 180; *Laphew* v. *Consolidated Bus Lines*, 133 W. Va. 291, 55 S. E. 2d 881; *O'Dell* v. *Universal Credit Company*,

118 W. Va. 678, 191 S. E. 568; *Robertson* v. *Hobson*, 114 W. Va. 236, 171 S. E. 745; *Warth* v. *County Court of Jackson County*, 71 W. Va. 184, 76 S. E. 420; *Dimmey* v. *Wheeling and Elm Grove Railroad Company*, 27 W. Va. 32; *Jones* v. *Hanbury*, 158 Va. 842, 164 S. E. 545; 38 Am. Jur., Negligence, Section 41.

It is clear from the evidence that the sudden emergency which confronted the driver of the bus was not created by any negligence on his part and that, in such emergency, his action in stopping the bus suddenly to avoid a serious collision, which would have occurred if he had not acted as he did, was the act of an ordinary prudent person in an emergency similar to the one with which he was confronted. The facts of this case, as established by the clear preponderance of the evidence, bring it within the foregoing rule, as stated in the *Tochek* case, and the decision of that case controls the decision in the case at bar.

As already pointed out, though there are some discrepancies in the testimony of the witnesses who saw the oncoming automobile concerning its distance from the bus and its position on the roadway, the evidence is undisputed that the automobile, while approaching the bus at the unchecked speed of about twenty five miles an hour, was in the traffic lane of the bus when it was fifty two feet, forty feet, and fifteen feet from the bus. These facts are controlling upon the question of whether the driver of the bus was faced with a sudden emergency. In view of these facts and other uncontroverted facts and circumstances established by the evidence, the circuit court should have instructed the jury to return a verdict for the defendant and its refusal to do so was reversible error. When the evidence, though conflicting as a whole, embraces uncontradicted facts and circumstances which cause the case to turn in favor of one of the parties so that a verdict adverse to such party can not stand, the court should direct a verdict in his favor. *Adkins* v. *Aetna Life Insurance Company*, 130 W. Va. 362, 43 S. E. 2d 372; *Norvell* v. *Kanawha and Michigan Railway Com-*

*pany,* 67 W. Va. 467, 68 S. E. 288, 29 L. R. A., N. S., 325; *England* v. *Aetna Life Insurance Company,* 285 Mich. 302, 280 N. W. 771. See also *Tochek* v. *Monongahela Transport Company,* 109 W. Va. 20, 152 S. E. 776; *Smith* v. *Abbott,* 106 W. Va. 119, 145 S. E. 596; *Summit Coal Company* v. *Raleigh Smokeless Fuel Company,* 99 W. Va. 11, 128 S. E. 298; *Hicks* v. *New River and Pocahontas Consolidated Coal Company,* 95 W. Va. 17, 120 S. E. 898.

The verdict which constituted a finding of negligence on the part of the driver of the bus and fixed responsibility for his action on the defendant, his principal, is contrary to the clear preponderance of the evidence. For that reason the circuit court, after having refused to instruct the jury to return a verdict for the defendant, should have sustained the motion of the defendant to set aside the verdict and award a new trial. A verdict of a jury, which is without sufficient evidence to support it, or is plainly against the decided weight and preponderance of conflicting evidence, will on proper motion be set aside by the court. *Kap-Tex, Inc.* v. *Romans,* 136 W. Va. 489, 67 S. E. 2d 847; *Cannady* v. *Chestonia,* 106 W. Va. 254, 145 S. E. 390; *Palmer* v. *Magers,* 85 W. Va. 415, 102 S. E. 100; *Griffith* v. *American Coal Company,* 78 W. Va. 34, 88 S. E. 595; *Kelley* v. *Aetna Insurance Company,* 75 W. Va. 637, 84 S. E. 502; *Sims* v. *Carpenter, Frazier and Company,* 68 W. Va. 223, 69 S. E. 794; *Coalmer* v. *Barrett,* 61 W. Va. 237, 56 S. E. 385; *Chapman* v. *Liverpool Salt and Coal Company,* 57 W. Va. 395, 50 S. E. 601.

The plaintiff cites and relies upon *Isabella* v. *West Virginia Transportation Company,* 132 W. Va. 85, 51 S. E. 2d 318; and *Laphew* v. *Consolidated Bus Lines,* 133 W. Va. 291, 55 S. E. 2d 881, to sustain her contention that the driver of the bus was not faced with a sudden emergency. The different factual conditions in connection with the question of the existence of a sudden emergency in each of those cases distinguish them from this case and for that reason those decisions do not apply to or control the present decision on that point.

The judgment is reversed, the verdict is set aside, and the case is remanded for a new trial which is here awarded the defendant.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*