STATE *v.* N. E. McHAFFA

(No. 6732)

Submitted February 24, 1931. Decided March 10, 1931.

*E. A. Hansbarger, S. D. Stokes, Lafe B. Chafin,* and *John Kee,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

LITZ, PRESIDENT:

The defendant, Ezra McHaffa, was convicted of voluntary manslaughter and sentenced to the penitentiary for two and one-half years under an indictment, charging him with the murder of his wife, Annie McHaffa, July 27, 1928. They had been married and living together since 1916. Two children of the marriage—a girl ten and boy four—were living. The defendant had been in the employ of the Norfolk & Western Railway Company, as a locomotive fireman, for sixteen years, living in the city of Williamson, Mingo County, since 1922.

McHaffa, the only eye witness to the tragedy, testified that he left home at 8:45 P. M., the day before, on his regular run east; on reaching Wilco in McDowell County, about 2:30 the following morning, his crew were ordered back to Williamson, and starting on their return at 5:30 arrived at 12:10 P. M., several hours ahead of schedule; he soon left his engine for home, and observing the doors closed as he approached the house, "thought" to himself, "Well, the *woman* is not expecting me back and she is gone somewhere;" entering, he observed his wife sitting in a rocking chair in the front room with a writing tablet in her hand; she expressed surprise at his returning so soon and told him that she had just received a letter from their daughter who was visiting his parents in Bluefield, and that she was writing a letter to his mother; discovering, after taking the tablet from her, that it bore no writing and thinking she was sitting on the letter, without further ceremony, he cast her from the chair across the room and grasped a paper lying in the chair; on recovering her balance, she grappled with him for possession of the paper, which he held in his right hand, and in the scuffle or fight, she bit his right thumb, causing him to strike her in the face with his fist; finally, after chasing him around the house, she

changed her dress and left, going to the nearby home of D. R. Lusk; while she was away he read the paper which was addressed apparently to some man, designated "pal", and in which she expressed love for the addressee and aversion for her husband because of his cruelty to her; returning fifteen or twenty minutes later she again attempted to recover the letter; after she had tried to strike him first with a bottle, then a hand iron, both of which he wrenched from her hands, he shoved her into the dining room; thereupon "she seized a knife laying there and as she came through into the kitchen on me I stepped aside and jerked her by me and hit her in the side of her head with my fist to avoid her cutting me with the knife," knocking her against the wall; she fell to the floor, gasped three times, and stopped breathing; he placed her body upon a bed and left for Doctor John D. Lee, a few blocks away; on arriving at the office of Doctor Lee, he told him and Mrs. Lee that he had struck his wife and thought he had killed her.

Doctor Lee, who examined the body twenty or thirty minutes after death, found blood around the mouth and nose, and in the left ear; the entire back of the head bruised from near the top to the base of the cranium; a very severe bruise over the mastoid process of the left spheroid bone, involving the edge of the ear for "probably two or three inches," and numerous bruises on the face. Doctor L. F. Boland, who examined the body on the following morning, found a contusion of the right eye the size of a fifty-cent piece; a contusion of the chin; four contusions on the neck; five abrasions on the right side of the back of the head; contusions on the back of the hands; abrasion on the inner side of the left thumb, and a contusion on the left leg. He stated also that, in his opinion, death had resulted from a fracture of the base of the skull with possible hemorrhage from the posterior branch of the middle meningeal. A bloody beer bottle was found in the kitchen sink and there was evidence of recent mopping of spots on the floor. According to the testimony of Mrs. D. R. Lusk, when Mrs. McHaffa came to the Lusk home after the first affray, her face was swollen, she "was spitting blood" and stated that her husband had

"beaten her to death". McHaffa told the sheriff about an hour after the death of his wife that he had killed her. One witness for the state testified that McHaffa had told him a month or six weeks before the homicide that he intended to kill his wife. Another witness testified to a similar threat made by McHaffa about six months before, and, further, that McHaffa stated on the same occasion that he was trying to find some ground upon which to secure a divorce from his wife, but had not been able to do so. The only injury sustained by defendant was a small abrasion or "skinned place" on top of his right thumb.

The defendant seeks a reversal of the judgment on the grounds (1) that the evidence is insufficient to establish the corpus delicti; (2) that the trial court improperly refused his instructions 1, 2, 3, 5, 7, 9, 10 and 12; (3) that the trial court improperly considered the instructions in his absence, and (4) that the trial court improperly amended the verdict of the jury.

The first point of error is deserving of little comment. Suffice it to say the admission of the defendant that he killed his wife, is fully corroborated by the evidence of violence on her body and the opinion of Dr. Boland. Defendant's instruction 1, directing a verdict of not guilty, was, therefore, properly refused. Having been acquitted of murder, he was not prejudiced by the refusal of instruction 2, directing such finding. Instruction 3, which would have told the jury that they could not find him guilty of voluntary or *involuntary* manslaughter unless he had caused the death of his wife in the intentional and willful commission of an unlawful act, is a plain misstatement of the law. "The absence of intention to kill or to commit any unlawful act which might reasonably produce death or great bodily harm is the distinguishing feature between voluntary and involuntary homicide." *State v. Weisengoff*, 85 W. Va. 271. Instruction 5 would have required the jury to acquit the defendant if they believed that some unknown cause contributed to the death. This instruction is erroneous not only because the evidence does not tend to prove that death resulted from any cause other than the criminal acts of the accused, but also because it would au-

thorize an acquittal for death resulting from an unlawful act if superinduced by the weakened physical condition of the victim. Instructions 7 and 9 present the theory of accidental killing, without evidence to support it. Instruction 10 also presents the theory of death from unknown cause. Instruction 12 would have told the jury to acquit the defendant upon the theory that death resulted from the victim's head striking the' floor when she was knocked down by him. This instruction ignores the fact that the defendant brought on the difficulty and the severity of the attack made by him upon his wife. *Bull* v. *Commonwealth,* 14 Gratt. 613.

There is no merit in the point of error based upon the consideration by the trial court of instructions in the absence of defendant. After completion of the evidence, the court, with counsel, retired to a small room immediately back of his chair, to consider an instruction proposed by him, directing an acquittal of first degree murder. The judge having reviewed the evidence at some length for the purpose of justifying the instruction, Honorable James Damron of counsel for the state had proceeded briefly with an opposing statement when it was discovered that the defendant was absent. Thereupon the judge and counsel returned into the court room, where, in the presence of the defendant, the proposed instruction was granted and other instructions tendered by the state and defense were considered and settled. The defendant relies upon *State* v. *Howerton,* 100 W. Va. 501, 130 S. E. 655, holding that it is error for the court with counsel to consider and settle instructions in the absence of the defendant. The discussion of the instruction excluding first degree murder from the jury's consideration, afterwards granted, did not, in our opinion, prejudice the defendant. This court is not inclined to extend the doctrine of the *Howerton* case.

Under the last point of error, it appears that notwithstanding the jury had been fully instructed as to their findings, including voluntary and involuntary manslaughter, the verdict as first read found the defendant guilty of manslaughter; thereupon the court inquired of the jury whether they meant voluntary or involuntary manslaughter, to which apparently

they all replied that they intended voluntary manslaughter. The verdict, having been accordingly amended, was approved by the jury as a body and individually. "In criminal as well as civil cases, a verdict is amendable with respect to matters of mere form when made with the consent of the jury." 27 R. C. L., p. 888.

The judgment is affirmed.