STATE OF WEST VIRGINIA

*v.*

GEORGE VANCE

(No. 12123)

Submitted January 23, 1962. Decided February 13, 1962.

CALHOUN, PRESIDENT, dissenting.

*Glyn Dial Ellis,* for plaintiff in error.

*C. Donald Robertson,* Attorney General, *George H. Mitchell,* Assistant Attorney General, for defendant in error.

HAYMOND, JUDGE:

In the trial of an indictment against the defendant, George Vance, for the crime of statutory rape, the jury returned a verdict of guilty as charged and, the State having waived the death penalty, the Circuit Court of Logan County by final judgment entered February 8, 1961, sentenced the defendant to imprisonment for life in the penitentiary of this State. To that judgement this Court granted this writ of error upon the application of the defendant.

The defendant, whose exact age is not established by the evidence but who is shown to be well above the age of sixteen years, had been married to the mother of the prosecutrix, Billy Lou Vance, a ten year old female child, for a period of approximately nine years before the date of the alleged offense which occurred in Logan County during the forenoon of Saturday, September 10, 1960. The prosecutrix lived with the defendant and his wife at or near a place known as Mountain Lake Park, which appears to be a part of a suburb of the city of Logan, in Logan County.

During the early forenoon of Saturday, September 10, 1960, the defendant, who had been drinking wine and who took a bottle of it with him, left his home, accompanied by the prosecutrix, an eleven year old neighborhood girl named Kay, and a young boy named Paul who apparently also lived in the same neighborhood, and proceeded in an automobile driven by the defendant to a stream near Stollings, in Logan County, to hunt for fishing worms and to fish in that stream. After they arrived near the stream the defendant told the prosecutrix and the boy to leave him and Kay and

to search for worms. While the defendant and Kay remained together and after the prosecutrix and the boy had gone some distance from the defendant the prosecutrix noticed that he felt the chest of the other girl. Shortly afterwards, the group having again come together, the defendant took the prosecutrix into some weeds or bushes near the bank of the stream, caused her to lie down and raised her dress. She pulled down her underclothing and he opened his trousers and lay on top of her.

The prosecutrix testified that her legs were spread apart; that the defendant placed his male organ between her legs and that its contact with her caused her pain in her female genital organ. While he and the prosecutrix were lying on the ground and he was moving up and down on top of her three men on the opposite side of the stream who had noticed the defendant and the children and whose suspicions had been aroused by his conduct, crossed the stream, came within a few feet of the defendant and saw him while he was on top of the prosecutrix. They testified in effect that the girl's legs were spread apart; that the defendant's male organ was exposed and rigid; and that they heard the girl cry out that his acts while lying on her hurt her. When the defendant became aware of their presence a few feet from him he jumped to his feet and the prosecutrix ran from the scene. The three men followed the defendant to his automobile which was parked nearby. Two of the men remained to watch the defendant and the third man went to notify the police. The defendant entered the automobile, drove it from the scene and proceeded to his home where he arrived shortly after noon. His wife, who testified as a witness in behalf of the State, stated that upon his arrival at his home he was pale and noticeably nervous. After the defendant had left the scene the prosecutrix again saw Kay and the two girls walked together toward their home, at which time, according to Kay, the prosecutrix was crying. On the way they were met by the wife of the defendant, who

had sent her to get the girls, and they were taken by her in an automobile to the home of the defendant.

After the police were notified two state troopers went to the home of the defendant, informed him of the charge against him, and placed him under arrest. They also took the prosecutrix and the defendant to police headquarters and obtained a written statement from each of them. The prosecutrix and the defendant were also taken to the Guyan Valley Hospital in Logan and each was examined by a physician at that place.

When the defendant was first questioned at police headquarters he denied the charge but later in the afternoon he made a written statement which he insisted he did not do until he had been struck by one of the officers. In that statement he said that he made it of his own free will without any threat or promise, that "Me and the kids were out to Stollings, we were fishing and we went to get some worms, me and Billy Lou. Billy Lou went with me to get them. We went over in the bushes and I told her to sit down and then I told her to lay down. I told her to pull up her dress and pull down her pants part way down. Then I took out my peter and put it between her legs and started going up and down, and then the men came from above us and one of them had a rock and said that * * * I should be killed for doing a thing like that. They went back to the car and he told the other two men to watch me, and then I jumped in the car and drove around to look for the girls, then I went home and then I sent my wife and brother's boy after the girls." After the trooper who took the statement testified that the defendant had not been struck or threatened or induced by any promise to make the statement, it was introduced in evidence.

The prosecutrix testified that after she and the defendant went into the bushes he made her lie down, "made me take my pants down and then he pulled out his privates."; that he opened his pants and "Then he stuck his privates close to my privates and started

going up and down'' between her legs; that while he was on her she felt pain in her privates; and that she said ''Oh, that hurts.'' just before the three men came to them. She also testified that on other prior occasions he had ''bothered'' her in the same manner but that she had never before engaged in such conduct with any other person.

The doctor who examined the prosecutrix at the Guyan Valley Hospital during the early afternoon of the same day stated that he specifically examined her genitals; that he found no bruises, no bleeding and no laceration; that the hymen was intact; that he obtained a vaginal smear with an applicator inserted through the opening of the hymen into the cavity of the vagina and that the smear showed prostatic secretion. He also testified that for such secretion to get inside the hymen it would be necessary for the male organ to come in contact with the sex organ of the female; and that the external lips would have to be parted and there would have to be contact. In answer to the question: ''Doctor, having in mind the fact that you found prostatic secretion inside of the vagina, what would be your opinion, if you have any, upon the question of whether or not the male organ penetrated between the outer lips of the labia of this young girl?'', he said: ''In my opinion it has.''

Though in his testimony the defendant denied that he had penetrated the female organ of the prosecutrix, he made this admission: ''Well, I had my thing between her legs, I asked her to pull her dress up and instead of pulling her dress up she pulled her pants down and I put my thing between her legs.'' He insisted that he was very drunk and that he did not know ''exactly'' what he was doing. Though it appears that he had drunk a considerable quantity of wine, persons who saw him before and after he took the prosecutrix into the bushes testified that he was sober or was not intoxicated when they saw him on the day of the alleged crime. Among the witnesses so testifying were his

wife, the prosecutrix, the other young girl who was with the prosecutrix and the defendant, the three men who came upon him near the bank of the stream, and the two officers who found him at his home where he was arrested and who interrogated him at police head-quarters.

In seeking reversal of the final judgment of the circuit court the defendant assigns many errors. Of the numerous assignments of error only four merit consideration. Those assignments are: (1) That the evidence fails to show that the defendant penetrated the female organ of the prosecutrix; (2) that the statement of the defendant was not voluntarily given and for that reason should not have been admitted in evidence; (3) that defendant's Instruction No. 1, which would have directed the jury to return a verdict of not guilty if the jury believed that the defendant was deprived of his reason and willpower because of intoxication and that the act of rape had not been completely performed, and defendant's Instruction No. 10, which would have told the jury that it should find the defendant not guilty if it believed that he had, though voluntarily, become intoxicated to such an extent and for such a period of time as to cause him to be unconscious of his acts and to be afflicted with illusions and hallucinations and in consequence was not responsible for the acts committed by him with the prosecutrix while in that kind of mental condition, should have been given, and that the refusal of the circuit court to give either instruction constituted reversible error; and (4) that the absence of the defendant during a short period while the instructions were being discussed and considered by the circuit court also constituted reversible error.

The contention of the defendant that the evidence is not sufficient to support the finding of the jury that the defendant penetrated the female genital organ of the prosecutrix and its verdict of guilty of the crime of statutory rape is completely devoid of merit. The defendant admitted that he placed his male organ be-

tween the prosecutrix's legs and, though he denied that he raped the prosecutrix, he did not state in his testimony that his act did not amount to penetration of her female genital organ. The testimony of the prosecutrix that the act of the defendant caused her pain and her spontaneous statement at the time that the defendant hurt her which was overheard by the men who saw the defendant while he was on top of the prosecutrix and the testimony of the doctor who examined the prosecutrix during the early afternoon of the same day constitute sufficient proof that the defendant succeeded in penetrating some part of the female genital organ of the prosecutrix and that his action in that respect constituted the offense of rape. To constitute the crime of rape, there must be some degree of penetration of the female genital organ by the male genital organ, but any penetration, however slight, of the labia or external lips of the vulva of the female is all that is necessary. The hymen need not be ruptured to sustain a conviction for rape. *State v. Higginbotham,* 146 W. Va. 730, 122 S. E. 2d 429; *State v. Brady,* 104 W. Va. 523, 140 S. E. 546.

From the evidence the jury had the right to believe beyond a reasonable doubt, as the verdict indicates it did believe, that the defendant was guilty of the offense of statutory rape charged against him in the indictment. The evidence fully justifies his conviction of that offense and the finding of the jury by its verdict that the defendant was guilty as charged will not be disturbed by this Court. "In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the accused beyond a reasonable doubt, though the evidence adduced by the accused is in conflict therewith. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done." Point 2, syllabus, *State v. Milam,* 142 W. Va.

98, 94 S. E. 2d 442; point 1, syllabus, *State v. Spradley,* 140 W. Va. 314, 84 S. E. 2d 156; point 3, syllabus, *State v. Lewis,* 133 W. Va. 584, 57 S. E. 2d 513; point 1, syllabus, *State v. Reppert,* 132 W. Va. 675, 52 S. E. 2d 820; point 2, syllabus, *State v. Hacker,* 130 W. Va. 91, 42 S. E. 2d 559; point 1, syllabus, *State v. Bowles,* 117 W. Va. 217, 185 S. E. 205. See also *State v. Cirullo,* 142 W. Va. 56, 93 S. E. 2d 526, 93 S. E. 2d 535; *State v. Curotz,* 142 W. Va. 45, 93 S. E. 2d 519, 93 S. E. 2d 535; *State v. Carduff,* 142 W. Va. 18, 93 S. E. 502, 93 S. E. 2d 535; *State v. Taylor,* 130 W. Va. 74, 42 S. E. 2d 549; *State v. Holmes,* 125 W. Va. 97, 23 S. E. 2d 61; *State v. Gunter,* 123 W. Va. 569, 17 S. E. 2d 46; *State v. Barkoski,* 96 W. Va. 265, 122 S. E. 654; *State v. Price,* 94 W. Va. 644, 119 S. E. 874; *State v. McLaughlin,* 91 W. Va. 654, 114 S. E. 278; *State v. Cook,* 81 W. Va. 686, 95 S. E. 792; *State v. Stewart,* 63 W. Va. 597, 60 S. E. 591; *State v. Henry,* 51 W. Va. 283, 41 S. E. 439. A new trial will not be granted in a criminal case on the ground of insufficiency of the evidence, when the verdict against the defendant is based on conflicting oral testimony and the credibility of witnesses is involved, *State v. Spradley,* 140 W. Va. 314, 84 S. E. 2d 156; *State v. Stowers,* 66 W. Va. 198, 66 S. E. 323; or when the verdict is supported by substantial evidence. *State v. Spradley,* 140 W. Va. 314, 84 S. E. 2d 156; *State v. Livingston,* 110 W. Va. 21, 156 S. E. 842.

The written signed statement of the defendant made by him to a police officer at police headquarters during the late afternoon of the day he was arrested was properly admitted by the circuit court. Though the defendant testified that he did not make and sign the statement until he was struck and knocked to the floor by one of the officers that assertion of the defendant is completely refuted by the testimony of the two officers who held him in custody and who questioned him about the offense with which he was charged. The circuit court found from the evidence that the statement had been freely and voluntarily made by the defendant, and this finding was also confirmed by the verdict of the

jury. "It devolves upon the trial court in the first instance, before admitting it, to determine from evidence whether a confession of guilt has been freely and voluntarily made, and not under duress or threats or by some inducement made or held out to the accused by someone in authority, of benefit or reward of a worldly or temporal character, or in mitigation of punishment; and the burden is upon the State to show to the satisfaction of the court facts justifying the admission of such confession." Point 6 syllabus, *State v. Bruner*, 143 W. Va. 755, 105 S. E. 2d 140; point 3, syllabus, *State v. Brady*, 104 W. Va. 523, 140 S. E. 546. See also *State v. Mayle*, 108 W. Va. 681, 152 S. E. 633; *State v. Richards*, 101 W. Va. 136, 132 S. E. 375; *State v Zaccario*, 100 W. Va. 36, 129 S. E. 763; *State v. Goldizen*, 93 W. Va. 328, 116 S. E. 687. The evidence was sufficient to show to the satisfaction of the court that the written statement of the defendant was freely and voluntarily made by him and that its action in admitting the statement was completely justified by the established facts. A confession of an accused is admissible in evidence when it appears that it was made to an officer without an inducement of a worldly or temporal character in the nature of a threat, promise or benefit held out to him by someone in authority with respect to his escape from or mitigation of his punishment. *State v. Goldizen*, 93 W. Va. 328, 116 S. E. 687. This Court has also said that the trial court has a wide discretion as to the admission of confessions and that ordinarily this discretion will not be disturbed on review. *State v. Mayle*, 108 W. Va. 681, 152 S. E. 633; *State v. Brady*, 104 W. Va. 523, 140 S. E. 546.

Instruction No. 1 and Instruction No. 10, offered by the defendant and refused by the trial court, were properly refused. Both instructions misstate the law and neither instruction is supported by the evidence. The only evidence that the defendant was intoxicated at the time of the alleged offense was his testimony that he was so drunk that he did not know "exactly" what he was doing. His testimony on that point is com-

pletely refuted by his testimony which shows that he knew and remembered all or most of the other facts and circumstances which occurred in connection with the alleged offense and by the testimony of the numerous witnesses who saw the defendant either before or shortly after the occurrence of the alleged offense that the defendant was sober or was not intoxicated at the time that each of the witnesses observed him. The mere statement of the defendant that he was so drunk that he did not know ''exactly'' what he was doing is not sufficient to support either of the instructions which the trial court refused to give. An instruction which incorrectly states the law should be refused. *Overton v. Fields,* 145 W. Va. 797, 117 S. E. 2d 598; *Thurston v. Keathley,* 143 W. Va. 795, 105 S. E. 2d 181; *Hartley v. Crede,* 140 W. Va. 133, 82 S. E. 2d 672; *Matthews v. Cumberland and Allegheny Gas Company,* 138 W. Va. 639, 77 S. E. 2d 180; *Wilson v. Edwards,* 138 W. Va. 613, 77 S. E. 2d 164; *Thrasher v. Amere Gas Utilities Company,* 138 W. Va. 166, 75 S. E. 2d 376; *Moore v. Turner,* 137 W. Va. 299, 71. S. E. 2d 342, 32 A.L.R. 2d 713; *Thomason and Beggs v. Mosrie,* 134 W. Va. 634, 60 S. E. 2d 699; *Gilkerson v. Baltimore and Ohio Railroad Company,* 129 W. Va. 649, 41 S. E. 2d 188; *Parrish v. City of Huntington,* 57 W. Va. 286, 50 S. E. 416. An instruction which is not sustained by the evidence should be refused. *State ex rel. Shatzer v. Freeport Coal Company,* 144 W. Va. 178, 107 S. E. 2d. 503; *State v. Morris,* 142 W. Va. 303, 95 S. E. 2d 401; *Mulroy v. Co-Operative Transit Company,* 142 W. Va. 165, 95 S. E. 2d 63; *State v. Cirullo,* 142 W. Va. 56, 93 S. E. 2d 526, 93 S. E. 2d 535; *Rees Electric Company, Inc. v. Mullens Smokeless Coal Company,* 141 W. Va. 244, 89 S. E. 2d 619; *Ward v. Smith,* 140 W. Va. 791, 86 S. E. 2d 539; *Hartley v. Crede,* 140 W. Va. 133, 82 S. E. 2d 672; *Thrasher v. Amere Gas Utilities Company,* 138 W. Va. 166, 75 S. E. 2d 376; *Thomason and Beggs v. Mosrie,* 134 W. Va. 634, 60 S. E. 2d 699; *Chesapeake and Ohio Railway Company v. Johnson,* 134 W. Va. 619, 60 S. E. 2d 203;

*Davis v. Pugh,* 133 W. Va. 569, 57 S. E. 2d 9; *State v. Humphreys,* 128 W. Va. 370, 36 S. E. 2d 469; *Neal v. City of Bluefield,* 105 W. Va. 201, 141 S. E. 779; *Morgan Lumber and Manufacturing Company v. Surber,* 104 W. Va. 308, 140 S. E. 12; *Roberts v. Lykins,* 102 W. Va. 409, 135 S. E. 388; *Wilson v. McCoy,* 93 W. Va. 667, 117 S. E. 473; *Williams v. County Court of Lincoln County,* 90 W. Va. 67, 110 S. E. 486; *Penix v. Grafton,* 86 W. Va. 278, 103 S. E. 106; *Bond v. National Fire Insurance Company,* 77 W. Va. 736, 88 S. E. 389.

Section 2, Article 3, Chapter 62, Code, 1931, provides in part that "A person indicted for felony shall be personally present during the trial therefor." This provision was incorporated in the Virginia Codes of 1849 and 1860 and has remained intact in the Codes of this State since the Code of 1868. In many decisions of this Court beginning with *Younger v. The State,* 2 W. Va. 579, 98 Am. Dec. 791, decided in 1868, and including *Dye v. Skeen,* 135 W. Va. 90, 62 S. E. 2d 681, 24 A.L.R. 2d 1234, decided in 1950, this Court has held that this requirement of the statute means that such person must be present in person when any step affecting him is taken from arraignment to final judgment inclusive. *Dye v. Skeen,* 135 W. Va. 90, 62 S. E. 2d 681, 24 A.L.R. 2d 1234; *State v. Martin,* 120 W. Va. 229, 197 S. E. 727; *State v. Howerton,* 100 W. Va. 501, 130 S. E. 655; *State v. McCausland,* 82 W. Va. 525, 96 S. E. 938; *State v. Snider,* 81 W. Va. 522, 94 S. E. 981; *State v. Grove,* 74 W. Va. 702, 82 S. E. 1019; *State v. Sutter,* 71 W. Va. 371, 76 S. E. 811, 43 L.R.A., N.S., 399; *Barker v. Stephenson,* 67 W. Va. 490, 68 S. E. 113; *State v. Stevenson,* 64 W. Va. 392, 62 S. E. 688, 19 L.R.A., N.S., 713; *State v. Detwiler,* 60 W. Va. 583, 55 S. E. 654; *State v. Sheppard,* 49 W. Va. 582, 39 S. E. 676; *State v. Parsons,* 39 W. Va. 464, 19 S. E. 876; *State v. Greer,* 22 W. Va. 800; *State v. Sutfin,* 22 W. Va. 771; *The State v. Conkle,* 16 W. Va. 736. Several of these cases, holding that in a felony case the defendant must be personally present when anything is done affecting him, say that the defendant must be personally present

from the inception of the trial until the final judgment and that the record must show his presence. This Court has said that this provision of the statute has always been viewed as mandatory, that it will be strictly applied and enforced, and that the right which it safeguards to the accused of being personally present at all times during his trial has been deemed to be an inalienable right. *State v. Howerton,* 100 W. Va. 501, 130 S. E. 655; *State v. Grove,* 74 W. Va. 702, 82 S. E. 1019. In the *Howerton* case, in which the accused was indicted and tried for murder, the judgment of confinement in the penitentiary was held to be erroneous and was reversed on the sole ground that instructions offered by the State and the defendant were argued to and acted upon by the trial court in the absence of the defendant. In the opinion in that case this Court said: ''There is certainly as great a reason for the defendant being present at the argument and decision upon the instructions as when objection to evidence or motion for a new trial is argued and decided. The instructions, which give complexion to the evidence, are presumed to cover the case in its entirety. The presence of the accused may serve not only as a tempering influence upon the court, but in some cases he might, if present, stimulate and aid counsel representing his interests.''

In the *Howerton* case this Court, quoting from its opinion in *State v. Grove,* 74 W. Va. 702, 82 S. E. 1019, used this language: ''The statute stands as it has stood in the Virginias for years: 'A person indicted for felony shall be personally present during the trial therefor'. Code 1913, Chapter 159, Section 2. The right of one under indictment for a felony to be personally present at every stage of his trial cannot be denied him. The statute has always been viewed as absolutely mandatory, even when it could be seen that no harm has come from its nonobservance. Notwithstanding such strict view of the right given, no legislature has seen fit to liberalize the rule. Quite apparently our lawmakers continue to sanction the policy of the

original enactment as strictly interpreted and enforced by the courts. Such strict interpretation and enforcement in some instances seems unnecessarily technical. Particularly is this so when in a case it appears affirmatively that the accused could not have been prejudiced by a slight disregard of the statute. But the right of the accused in a felony case to be personally present at all times during his trial has ever been deemed rather an inalienable one. The province for change properly lies in the Legislature, not in this Court.'' In the syllabus in *State v. Martin*, 120 W. Va. 229, 197 S. E. 727, in strictly applying the mandatory provision of Section 2, Article 3, Chapter 62, Code, 1931, that ''A person indicted for felony shall be personally present during the trial therefor.'', this Court held that ''In a felony case the accused must be present in person from the inception of the trial on the indictment to the final judgment, when anything is done affecting him; and the record must show his presence.''

It is true that this Court in four cases has refused to reverse the conviction and sentence in a felony case when certain proceedings in connection with the trial of the accused occurred during his absence. *State v. Blankenship*, 137 W. Va. 1, 69 S. E. 2d 398; *State v. Roberts*, 122 W. Va. 536, 11 S. E. 2d 172; *State v. Mc-Haffa*, 110 W. Va. 266, 157 S. E. 595; *State v. Lucas*, 103 W. Va. 743, 138 S. E. 393. In each of those cases, however, this Court, in effect, considered that the acts in question had not occurred during the trial of the accused and were not within the provision of the statute which mandatorily requires the presence of the accused in the trial of a felony from its inception until the final judgment, although in the opinions in the *Roberts* and *McHaffa* cases and in point 2 of the syllabus in the *Lucas* case there are statements that the occurrence of such acts resulted in no prejudice to the defendant.

From the long line of decisions in which the absence of the defendant has been held to be reversible error

the controlling characteristic which differentiates the activities that occur in connection with the trial of a person indicted for a felony appears to be whether they occurred during the trial and affected his interest and in consequence are within the scope of the statute and not whether such activities prejudiced any right of the defendant. The record in this case indicates that after the judge, the prosecuting attorney, the defendant and his attorney had gone to the judge's chambers and while the instructions submitted in behalf of the State and in behalf of the defendant were being discussed and considered by the attorneys and the judge, the absence of the defendant was discovered; that the proceedings were then suspended until the defendant was sent for and had returned to the room; that the defendant was not observed by anyone when he voluntarily left the room; that he was absent for about four or five minutes; and that he then returned and the discussion of the instructions was resumed in his presence.

It is clear that the voluntary absence of the defendant for a period of four or five minutes occurred during the trial and that the action taken concerning the instructions was the type of action which related to and necessarily affected his interest. His absence is clearly within the scope of the statute, although it and the action of the court did not prejudice any of his rights. The discussion of the instructions during his absence and before it was discovered, however, constituted a clear, though technical, violation of the mandatory requirement of the statute that a person indicted for a felony must be personally present during the trial upon such indictment. The only difference between the occurrences in the *Howerton* case and those in this case is one of degree. In principle the occurrences in both cases are the same. In the *Howerton* case the defendant was apparently absent during the entire time that the instructions were considered and acted upon. In this case the defendant was present when the consideration of the instructions began and was voluntar-

ily absent for a few minutes while the instructions were being discussed and considered, but after his absence was discovered and he had returned to the room he continued to be present until the discussion of the instructions was concluded and the instructions were acted upon by the judge.

The decision in the *Howerton* case applies to and controls the decision as to the absence of the defendant during a part of his trial in this case and requires the reversal of the judgment of life imprisonment rendered by the circuit court. In reluctantly reversing that judgment this Court adheres to and follows its many prior decisions which require strict compliance with the mandatory provision of the statute. If such requirement results in the reversal of judgments of conviction in felony cases on purely technical grounds, as it has in this case, the desired relief must come from the Legislature and not from the courts. Until the Legislature acts to amend and liberalize the statutory requirement to prevent reversal of such judgments by reason of slight or technical noncompliance with the present statute, it must be presumed that the present strict enforcement of the mandatory provision of the present statute complies with and gives effect to the legislative intent at the time of the enactment of the statute.

Solely because of the error which resulted from the absence of the defendant during the discussion of the instructions, the judgment is reversed, the verdict of the jury is set aside, and this case is remanded to the circuit court for a new trial which is here awarded the defendant.

*Judgment reversed,*
*verdict set aside,*
*new trial awarded.*

---

Calhoun, President, dissenting in part:

I respectfully dissent from that part of the decision

and opinion which is summarized in the eighth point of the syllabus.

In all deference I suggest that the majority opinion may have killed in its infancy a wholesome trend toward an amelioration of the harsh rule announced and perpetuated by earlier decisions. In the case of *State v. McHaffa,* 110 W. Va. 266, pt. 2 syl., 157 S. E. 595, the Court stated: "In the trial of an accused for murder it is not *reversible* error for the court to discuss with counsel in the absence of the accused an instruction, afterwards given, requiring the jury to acquit him of murder in the first degree." (Italics supplied.) In the body of the opinion the Court stated: "The discussion of the instruction excluding first degree murder from the jury's consideration, afterwards granted, *did not, in our opinion, prejudice the defendant.* This Court is not inclined to extend the doctrine of the *Howerton* case." (Italics supplied.) The *McHaffa* case manifestly is authority for the salutary and more reasonable rule that even though error of this nature occurs, it will not be regarded as reversible in the absence of a showing of prejudice. If plain language is to be given meaning and significance, the Court applied in that case the rule relating to harmless error. In the second point of the syllabus of *State v. Lucas,* 103 W. Va. 743, 138 S. E. 393, the Court stated: "The mere calling of the names of the twelve jurors by the clerk after the challenges have been completed and before the jury are sworn to try the issue joined in a felony case, in the absence of the accused, *is not prejudicial error.*" (Italics supplied.)

Sometimes the rule here under consideration is applied with greater strictness in trials for capital offenses, and hence it may be pertinent to observe that each of the two cases cited above involved an indictment for murder. I have been unable to find a case prior to this in which the decisions in those cases have been criticized or overruled. The result is, in my judgment, that contemporaneously with the orbital flight of Astronaut John H. Glenn, Jr., we are needless-

942

ly taking a backward step in order to be consistent with a rule which lost its basis in actualities centuries ago. The majority opinion forsakes the rule of reason announced by the two cases cited above, and declines to apply principles relating to waiver of rights and principles relating to harmless error in a manner and to a degree glaringly out of harmony with the application of such principles in this day in both civil and criminal cases.

In the case of *State v. Martin,* 120 W. Va. 229, 231, 197 S. E. 727, 728, the Court stated: "The purpose of the statute is to preserve inviolate for an accused person his *right and privilege* of seeing and hearing what transpires at his trial, * * *." (Italics supplied.) Here the accused was not denied any right or privilege. At all times he was afforded the right and privilege of being present and, except for the very brief period, he was actually present. If "the right and privilege" of being present at his trial had been denied to him, I would be in the forefront of those rallying to his side. On the contrary, the accused himself voluntarily absented himself for a very brief period of time, without asking permission, without the knowledge of the distinguished trial judge, and without the knowledge or consent of any other person in authority. While it appears that instructions were being "considered" meantime, it does not appear that a single instruction was granted or refused during that brief interim. In my judgment, this may be the first case in which this Court has reversed a conviction in the absence of an affirmative showing of the actual occurrence, during the absence of the accused, of something regarded as a part of his trial. Heretofore, in order to warrant a reversal, it must have appeared that the defendant was absent when something was "done affecting him." *Dye v. Skeen,* 135 W. Va. 90, 99, 62 S. E. 2d 681, 687. In numerous cases it has been held, as pointed out in the majority decision, that absence of the accused during the occurrence of something not actually a part of his trial will not warrant a reversal.

The right and privilege on which the accused relies is not constitutional, but merely statutory, though perhaps declaratory of the common law. An accused has a right to a jury trial but he may waive that right and enter a plea of guilty. He has the right to be tried in the county in which the offense occurred, but he may waive that right and move for a change of venue. He may waive his right to counsel. He may waive his right not to become a witness at his own trial. In numerous other situations an accused person may waive most sacred rights vouchsafed to him not merely by statute, but by constitutional provision also. See *In re Speiser's Petition,* (Cal. App. 2d), 310 P. 2d 454, 459-60.

I am not suggesting that this Court should hold that an accused person has a right to waive his privilege of being present throughout his entire trial; but I do insist that we should not disavow or refuse to apply in this situation principles relating to waiver, harmless error and invited error which are so generally applied in other areas. The defendant at all times had the right and privilege of being present at his trial and that right was not denied, curtailed, or abridged in the slightest degree at any time. He is merely seeking to take advantage of his own wrong; to take advantage of an alleged error which he invited or caused; and, by a reliance on his own act, to render abortive and a nullity a trial which this Court finds otherwise to have been free of prejudicial error.

Apparently, West Virginia, Virginia and Texas have in some respects at least applied with greater strictness the rule here being considered. Anno. 69 A.L.R. 2d 844. I believe that in Virginia the rule has recently been applied with less strictness. In the case of *Williams v. Commonwealth,* 188 Va. 583, 593, 50 S. E. 2d 407, 412, the court said that the rule "must not be so enlarged as to exceed its true scope and thereby made to include all inquiry into and consideration of purely legal matters by the trial judge which are in fact and reality merely careful and prudent preparation for the

resumption and conduct of the trial." In the recent case of *Carpenter v. Commonwealth,* 193 Va. 851, 860, 71 S. E. 2d 377, 382, the court stated: "The test to be applied in determining whether or not the statute has been violated is: Has the interest of the defendant been affected by the action of the judge?"

In connection with an annotation the following appears in 100 A.L.R. 478: "Even apart from any question of waiver, a mere temporary and voluntary absence of accused from the court room during his trial has been held in numerous cases, even those involving a capital offense, not to afford ground of error." To the same effect see 23 C.J.S., Criminal Law, Section 975, page 902; 16 C.J., Criminal Law, Section 2071, page 818; 14 Am. Jur., Criminal Law, Section 199, page 906. The following statement appears in 14 Am. Jur., Criminal Law, Section 199, page 906: "It is clear the accused may waive any trial at all, for he may plead guilty and thus subject himself to the severest penalty which might follow a trial. Since he can do this, he may waive any mere privilege on the trial that is designed only to aid him in shielding himself from such result. If a person charged with crime flees, allowing him to take advantage of his own wrong and obtain his discharge or a new trial would savor of absurdity and positive injustice."

The rule so strictly applied in this case unnecessarily places in the hands of a crafty, resourceful accused person a frightful weapon with which deliberately to thwart all painstaking efforts of a court to accord to him every right provided by law; and we should not be so naive as to fail to recognize that many accused persons are quite crafty, resourceful and experienced.

Inasmuch as I am speaking only for myself, I would like to record the fact of my sympathy for the trial judge whose efforts to accord to the defendant the right here involved were defeated, not by any dereliction on his part, but rather by the one the judge was so sedulously endeavoring to protect in the enjoyment of

that right. I can fully appreciate his impatience and exasperation when the situation developed without his knowledge or consent. He is the one who first noticed the absence of the accused, and he immediately suspended whatever was being done by him until the accused was returned to his presence. When this situation was urged as a basis of error, the trial judge stated:

> "Now, do you mean to argue that whenever the Court goes to all the pains of taking the defendant in the Judge's chambers along with counsel for the State and the Defense, for the purpose of considering the instructions, and the defendant of his own volition walks out like a big horse, that he can take advantage of that?
>
> &ast;  &ast;  &ast;
>
> "The Court doesn't believe it. I gave him every opportunity to be present, had him come in, and take a seat, certainly the Court is not compelled to manacle him to his ankles or the desk to make certain the defendant is in there. &ast; &ast; &ast;."

I trust that I am not employing inelegant or inappropriate language when I state that the defendant is not complaining that the trial court *denied* him any right; but rather that, figuratively speaking, the trial court did not cram such right down his throat. It is perhaps superfluous to observe that a trial judge, in the trial of an indictment charging a capital offense, has many things to engage his attention and faculties other than constantly keeping an eagle eye on the accused. We should not lose sight of the fact that the accused has the constitutional right to counsel whose primary function is and should be to see that his client is protected in the enjoyment of his rights.

I have not undertaken to assemble all the reported decisions sustaining the proposition that a brief, voluntary absence of the accused does not constitute reversible error when no prejudice to him appears to have resulted from such absence, but among the host of cases of that nature are the following: *State v. McGinnis,* 12 Idaho 336, 85 P. 1089; *Doyle v. Commonwealth,* 18 Ky. 518, 37 S. W. 153; *State v. Maxwell,* 151

946

Kan. 951, 102 P. 2d 109, 128 A.L.R. 1315; *State v. Gonce,* 87 Mo. 627; *State v. Rubaka,* 82 Conn. 59, 72 A. 566; *Nelson v. State,* 190 Ark. 1027, 82 S. W. 2d 519; *State v. Henderson,* 168 La. 487, 122 So. 591; *Van Houten v. People,* 22 Colo. 53, 43 P. 137; *Barton v. State,* 67 Ga. 653, 44 Am. Rep. 743, 100 A.L.R. 478; *People v. Bragle,* 88 N. Y. 585, 42 Am. Rep. 269; *Diaz v. U. S.,* 223 U.S. 442, 32 S. Ct. 250, 56 L. Ed. 500; *McClendon v. State,* 36 Okl. Crim. 11, 251 P. 515; *Henry v. State,* 94 Fla. 783, 114 So. 523; *Sobieski v. State,* 126 Tex. Crim. Rep. 405, 71 S. W. 2d 534, 100 A.L.R. 479; *State v. Bramlett,* 114 S. C. 389, 103 S. E. 755; *Vicks v. State,* 42 Ga. App. 451, 156 S. E. 729; *State v. Cherry,* 154 N.C. 624, 70 S. E. 294.

The majority opinion expresses a reluctance to yield to that which is conceived to be a necessity of applying strictly the statutory provisions in this instance, and I believe the opinion, impliedly at least, suggests the possibility of a revision of the statute to lessen the stringency of its language. To the extent that I construe the majority opinion correctly in this respect, I heartily concur. I earnestly trust that the legislature will revise the statute, and yet I must confess that it causes in me a sensation which is by no means one of pride to appeal to the legislative branch of government to relieve the judicial branch of an absurdity which the Court itself has created and should rectify.