**Robert Lyle RICE, Petitioner,**

v.

**Ira M. COINER, Warden of the West Virginia State Penitentiary, Respondent.**

No. 68–43–E.

United States District Court
N. D. West Virginia.

April 2, 1969.

Raymond L. Fair (Court appointed), Elkins, W. Va., for petitioner.

C. Donald Robertson, Atty. Gen., of West Virginia, Morton I. Taber, Asst. Atty. Gen., Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

Petitioner, Robert Lyle Rice, has filed in this Court an application seeking federal habeas corpus relief from his state custody. He is presently serving a life sentence imposed by the Circuit Court of

Mineral County, West Virginia, on February 7, 1966, following his conviction after jury trial on the charge of first degree murder.

Petitioner avers that he was denied the effective assistance of counsel. He advances in support of this conclusion that his counsel introduced into evidence an alleged illegally obtained confession, suppressed other evidence favorable to the Petitioner, and failed to file a notice of appeal with the trial court, thereby depriving him the right to pursue an appeal.

At the plenary hearing in this Court, Petitioner told of the circumstances leading up to and surrounding the giving of a signed statement to the prosecuting attorney of the county where the offense was committed. He testified that he was arrested by state police officers on November 1, 1965, at approximately 7:20 p. m., and lodged in jail. There his clothes were taken by the assistant jailer, and he was later given other clothes. Petitioner states that he was roughed up and threatened at the jail, but he is not clear as to when and under what circumstances this event occurred. Petitioner stated that all lights were kept on constantly. About midnight Petitioner stated his shoes were removed by the state police, and he was taken barefooted to the courthouse by the state police and the prosecutor. Petitioner testified that at the courthouse he was asked to make a statement as to the alleged offense and he responded in an unconcerned, perhaps indifferent manner, but nevertheless in the affirmative. Petitioner stated that at this time he was a "right smart bit" upset. He continued that he had no attorney at that time, and that upon requesting counsel, was told he could get one the following day. In addition to refusing Petitioner's request for an attorney, Petitioner testified that the prosecutor did not warn him that any statement concerning the crime given might be used against him.

Petitioner further testified that after giving the statement, he was kept awake through the night by the continued light in his cell. Early the following morning, Petitioner stated that he was brought back to sign the prepared statement. He testified that he was "shook up" and signed it without reading it. On that day, November 2, 1965, after the statement had been signed by Petitioner, he was first represented by counsel. On these facts Petitioner alleges that the statement was illegally obtained and as such is inadmissible. Therefore, its use during the subsequent trial by his counsel, he maintains, constituted gross ineffectiveness.

Petitioner's testimony is strongly rebutted by Respondent's witnesses—the prosecuting attorney of Mineral County, West Virginia, the state trooper who arrested Petitioner and assisted in taking his statement, a second state trooper who assisted in the investigation of the case, and the assistant jailer where Petitioner was lodged on the night of the offense.

The testimony of the prosecuting attorney differs in many respects from that of Petitioner. He testified that at approximately 11:00 p. m. on the evening of Petitioner's arrest incriminating, or at least damaging, information had been assembled and he felt Petitioner should be questioned. The prosecutor testified that he inquired of Petitioner whether he desired to give a statement, and advised Petitioner of his right to have an attorney and of his other constitutional rights.

The prosecutor continued that when Petitioner responded that he saw no reason not to give a statement, Petitioner was taken to the grand jury room, in a second building approximately 50 feet from the jail. As they proceeded to the jail, accompanied by a state trooper, the prosecutor testified that he again inquired of Petitioner whether he desired counsel, and asked Petitioner whether he was tired and wanted to sleep and wait until the following morning to proceed. Petitioner again, according to the prosecutor, expressed his desire to continue without delay and without counsel.

The prosecutor testified further that as Petitioner's statement began, he advised Petitioner a third time of all his rights, and again suggested that taking the statement be postponed until morning, to give Petitioner time to rest and reflect. And again Petitioner stated he wanted to proceed. This third warning to Petitioner is reflected by the initial part of the statement itself.[1]

The prosecutor continued his testimony saying that the statement was prepared and completed at 6:00 a. m. the next morning. He then awakened Petitioner, instructed him of his rights—a fourth time—specifically offering Petitioner a telephone, after which the statement was read and signed by Petitioner.

The prosecutor further rebutted Petitioner's testimony by saying that Petitioner was thoroughly advised of his rights and treated well. For example of the latter, Petitioner was given doughnuts and coffee at one time during the taking of the statement. As to mistreatment of the Petitioner, the prosecutor stated that he had been informed that Petitioner was struck in the stomach with the butt of a shotgun when arrested. Also, the prosecutor stated that at a later time in Petitioner's proceedings, Petitioner stated in response to a question by the prosecutor, that he had no complaints of mistreatment at the time and place of arrest, but accused someone else of striking him after he arrived at the jail.

The prosecutor testified pointedly at the evidentiary hearing held in this Court that, in his presence, Petitioner was not harmed or mistreated in any way. He said that Petitioner being furnished other clothes upon confinement voluntarily surrendered his clothes to the police. He further testified that Petitioner never appeared beaten, upset or unbalanced and at all times was extraordinarily calm. On cross-examination the prosecutor stated that Petitioner's overwillingness, without cause, could possibly indicate Petitioner was in a state of shock. However, he continued that he had known Petitioner for ten years, and that Petitioner is slow and deliberate in all matters, showing little reaction or emotion, concluding that he had never seen Petitioner disturbed over anything.

The assistant jailer testified that he recalled Petitioner being brought in and the precise cell in which he was placed. He stated that there is no light in that cell, the lights being located in the "run-around"—or walkway—surrounding the cell blocks. He said that these lights were extinguished shortly thereafter. He noted that Petitioner appeared very calm when brought to jail.

The state trooper who arrested Petitioner and assisted in taking Petitioner's

---

1. On page 1 of the statement given by Petitioner, filed as part of the record in this habeas corpus case, is contained the following:

By (the prosecuting attorney) : Before you make your statement I want you to understand that your statement must be made voluntarily; that the State is making no promises to you; that perhaps we won't prosecute you for a crime. You have to understand that anything you say could be held against you if there is a trial or a case comes out of this. I want you to also understand that the constitution of the United States protects your rights as well as the constitution of this State but before you make any statement whatsoever you have a right to talk with an attorney.

If you desire an attorney the State would not object to your getting an attorney to confer with you so anything that you now state will have to be completely voluntary on your part. Now do you feel that you are presently awake and aware of what is happening? You know where you are?

By Mr. Rice : Yes one hundred per cent.

By (the prosecuting attorney) : Do you desire to make a voluntary statement?

By Mr. Rice : I will tell you what happened?

By (the prosecuting attorney) : You desire to make a voluntary statement knowing what I explained to you?

By Mr. Rice : Yes I do.

statement gave substantially the same testimony as the prosecutor. He noted that the prosecutor belabored the issue of Petitioner's rights. He stated Petitioner was very calm to the point of appearing unconcerned. He emphasized that he never mistreated, abused or coerced Petitioner, nor did anyone in his presence.

The second state trooper, who sought and obtained Petitioner's clothing, testified that Petitioner voluntarily surrendered his clothing and the deputy jailer immediately furnished him clean clothes and slippers. He stated that neither he nor anyone in his presence ever coerced, threatened or mistreated Petitioner. He, too, testified that Petitioner was never anything but "calm, cool and collected."

The preponderance of the evidence presented does not show that the statement given by Petitioner was obtained involuntarily. The weight of the evidence shows that Petitioner's right to assistance of counsel was clearly explained in satisfaction of the requirements of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).[2] The testimony adduced at the evidentiary hearing held in this Court shows neither fear induced by threats nor intimidation applied by promises and pressure. Conversely, Petitioner was pictured to be calm at all times, proceeding voluntarily on his own free will to give the statement. Any physical contact as now alleged by Petitioner was not shown to affect or influence in any degree Petitioner's decision to give a statement. As to Petitioner's claim that he was struck when arrested, it appears that this amount of force was reasonable and necessary to insure the effective arrest of Petitioner while maintaining the safety of many persons situated in a relatively close proximity to the place of arrest. The overall atmosphere surrounding Petitioner's custody and the

giving of the statement was proper— open, relaxed and unpressured—, conducive to obtaining a voluntary statement from Petitioner. As such it renders extremely remote the contention that Petitioner was motivated to give the statement by anything other than his own voluntary decision.

██ The test of the admissibility of a statement at trial is voluntariness. State v. Vance, 146 W.Va. 925, 124 S.E. 2d 252 (1962). The finding here that the statement was given voluntarily renders it then properly admissible into evidence. Petitioner alleges that its use by his counsel constitutes ineffectiveness. That contention is effectively disposed of by the finding above. In addition, upon further examination into the facts, the prosecutor explained that he did not introduce it because he felt it to be a complete fabrication. Petitioner's trial attorneys both testified that use of Petitioner's statement was a key part of their trial strategy. They testified that it was discussed with Petitioner and Petitioner did not object. Petitioner's trial attorneys testified that the purpose of introducing the statement was to show the jury that the statement taken by police, given by Petitioner without the presence and aid of counsel, was identical to Petitioner's testimony given in court before the jury. His attorneys testified here that they believed Petitioner's story was the truth, and that its introduction into evidence would strongly support their theory of defense and Petitioner's state trial court testimony.

The use of the statement in the state trial court constituted nothing less than valid, appropriate, totally thought-through trial strategy. As such its utilization constituted conscientious counsel making effective use of all matters to aid in the defense of a difficult murder trial. There is simply no evidence presented to indicate its use con-

---

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966) had not yet been decided at the time of Petitioner's arrest and trial, and, therefore, the now-familiar *Miranda* warnings were inapplicable to Petitioner. See Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), where the holding of *Miranda* was held to be not retroactive.

stituted ineffectiveness on the part of his trial counsel.

Petitioner urges also that his counsel deprived him of his right to file an appeal by their failure to file timely the notice of appeal with the court. Petitioner here has failed to carry this allegation by a preponderance of the evidence. See generally 39 C.J.S. Habeas Corpus § 100 c (1944). Both trial counsel testified as to this matter. One stated unequivocally that he filed the notice of appeal. He recalled vividly his strong personal feeling about the case which he believed should have been considered and the verdict corrected by the West Virginia Supreme Court of Appeals. He testified as to actually presenting the case on appeal and being denied. The second attorney testified that he aided in preparing of memoranda to submit on appeal.

■ The trial court transcript and records fully bear out what the attorneys avowed,[3] and thoroughly and conclusively rebut Petitioner's allegation and demonstrate it to be a totally baseless claim. Petitioner's statement that he received a document that said his attorneys failed to file for an appeal becomes strongly doubted when Petitioner could not furnish the document for this Court's consideration. In short, the evidence shows Petitioner received the benefit of a complete review of his case by the West Virginia Supreme Court of Appeals.

Because of the contention that his attorneys' failure to file the notice of appeal in a timely fashion denied him of his right to appeal, Petitioner alleges that this constitutes further ineffectiveness of counsel. Again, with the finding made above, the allegation is entirely unfounded. In his boundless desire to seek release at any price, Petitioner has irresponsibly raised absurd allegations of ineffectiveness that appear to deserve the classification of complete fabrication.

■ . Petitioner also asserts that his attorneys suppressed testimony favorable to his case by refusing to place Petitioner's wife, as well as other witnesses, on the witness stand. He thereby asserts further ineffectiveness on the part of counsel. In Root v. Cunningham, 344 F. 2d 1 (4th Cir. 1965) at p. 3, a discussion of effectiveness of counsel presents excellent thoughts concerning effectiveness of counsel, pertinent to Petitioner's case here:

Moreover, it may be said that, while a defendant is undeniably entitled to a fair trial according to the law of the land, yet he is not guaranteed a perfect one, and where an attorney gives his client his complete loyalty and serves his cause in good faith and to

---

3. Various stages of Petitioner's appeal are reflected in the orders of the Circuit Court of Mineral County, West Virginia. The following are representative:

(a) Order filed February 7, 1966, in which Petitioner's sentence was suspended for a period of 60 days to enable his counsel to prepare and tender a Bill of Exceptions, or a certificate in lieu thereof, as required for filing for a Writ of Error and Supersedeas.

(b) Order filed April 7, 1966, noting that the lengthy transcript was not completed, and granting an additional stay of execution of 60 days.

(c) The entry on May 20, 1966, of the certificate of the judge of the entire record of Petitioner's case, in lieu of a Bill of Exceptions.

(d) Order filed September 21, 1966, committing Petitioner to the Penitentiary containing the following paragraph:

Thereupon it was announced to the Court that * * * [the] Clerk of the Circuit Court of Mineral County, had on the 14th day of September, 1966, received a copy of an Order entered at a regular term of the Supreme Court of Appeals of the State of West Virginia, which Order was entered by the said Supreme Court on the 5th day of July, 1966, and which Order denied the Writ of Error and Supersedeas prayed for in the Defendant's Petition to the Supreme Court submitted on behalf of the Defendant on the 6th day of June, 1966.

The transcript of the court proceedings on which the above excerpts from orders are based reflect—and here verify—the actions of Petitioner's attorneys in prosecuting his appeal.

the best of his ability, the due process requirement for effective assistance of counsel is generally met. Johns v. Smyth, 176 F.Supp. 949 (E.D.Va. 1959); Morton v. Welch, 162 F.2d 840 (4th Cir. 1947). Ordinarily, one is deprived of effective assistance of counsel only in those extreme instances where the representation is so transparently inadequate as to make a farce of the trial. Snead v. Smyth, 273 F.2d 838 (4th Cir. 1959). This is especially true where, as here, the defendant chose and employed his own counsel.

This Court believes that there is abundant evidence presented here to show representations satisfying the due process requirement for effective assistance of counsel.

■■ Petitioner claims also that his clothes were taken by the police shortly after his arrest and were not returned to him, thereby suggesting that he was denied a fair trial. Petitioner inferred that the clothes could have been used as favorable evidence in his defense. If such be true, it perhaps would constitute error on the trial level that might possibly be asserted by appeal. However, only where irregularities in the state trial court become so flagrant as to impair fundamental fairness do they become proper allegations to set forth on federal habeas corpus. 28 U.S.C.A. § 2241; Harrison v. Boles, 307 F.2d 928 (4th Cir. 1962); Grundler v. State of North Carolina, 283 F.2d 798 (4th Cir. 1960). "Errors of fact or law committed during the trial of a criminal case, which do not involve the denial of a constitutional right, may be reviewed only on appeal and not in a habeas corpus proceeding." Harrison v. Boles, supra at 931. It is the opinion of this Court that the evidentiary irregularity alleged by Petitioner here is not of the magnitude to involve violation of any fundamental right guaranteed by the United States Constitution.

Petitioner's final allegation is that no valid judgment was entered in the case, on which the commitment order under which he now serves could be based. What precisely is contended here is unclear. Petitioner stated that he was never sentenced by the court. In Petitioner's case the jury returned a verdict of guilty of murder in the first degree with a recommendation of mercy. Under West Virginia Code § 62–3–15 (Michie 1966), this makes Petitioner eligible for parole. Petitioner stated that he knew his sentence was for life.

■ Petitioner essentially claims that no order was entered on February 7, 1966, as referenced by several subsequent orders. This is wholly rebutted by the record itself. An examination of the state trial record filed in this case reveals an order entered by the Circuit Court of Mineral County, West Virginia, on February 7, 1966, reflecting the denial of a motion for a new trial, the passage of sentence on Petitioner in accordance with the verdict of the jury returned on February 4, 1966, and the stay of execution of this sentence for 60 days to enable Petitioner's attorneys to prosecute an appeal. The matters set forth in this order are those which, as this Court understands, Petitioner claims were never encompassed in an order. The order of February 7, 1966, is, in fact, the order which Petitioner claims is nonexistent. The commitment order of September 21, 1966, referring back to the order of February 7, 1966, is likewise complete and proper in all respects. Indeed, an examination of the entire transcript and record of Petitioner's case in the state trial court shows each stage of the proceedings reflected in clear, precise and complete detail. The state trial court record is not found wanting in any particular.

For the reasons set out above, Petitioner has failed at his plenary hearing to adequately support any ground sufficient to entitle him to receive federal habeas corpus relief. An order will therefore be entered denying relief and dismissing the petition.